257 So.2d 372

Daniel SMITH

v.

STATE.

6 Div. 61.

Court of Criminal Appeals of Alabama.

Jan. 25, 1972.

Thomas Seay, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

PER CURIAM.

The indictment in the Circuit Court of Jefferson County charged the defendant with murder in the first degree. He was convicted of murder in the second degree and sentenced to ten years imprisonment, from which judgment he appeals.

The appellant entered a plea of not guilty and relied upon self defense under the plea.

In view of the motion of appellant to exclude the evidence, which was overruled, and the refusal of the court to give appellant's requested written charge 3, which is affirmative in nature, it is appropriate to set out the substance of the evidence offered.

According to the testimony offered by the state, several men were visiting in the home of Willie Jo Wilson in Pratt City, Jefferson County, during the evening of December 21, 1968. Also present were two of Willie Jo's daughters, Florence and Anita Wilson; two children, and the person who was later killed, Erwin Stewart. Most of the visitors were in a front room which opened onto the front porch of the house, with the exception of Anita Wilson and Tommy Bridges, who were in the other side of the house. Also there was a bed, a sofa, and a television set, with a program on; and Willie Jo was just inside the room near a door or close enough to hear the conversation in the front room. Edward Earl Jones testified for the state, in substance, that the appellant came in the front door near 8:00 and stood just inside with a top coat on. Appellant said nothing, but the deceased expressed some fear of Daniel Smith, at which time Willie Jo advised him to leave the house if he thought some one would hurt him. He immediately moved toward the door and asked for his hat. Appellant replied that deceased did not have a hat and deceased asked what he had to do with it. At this time, appellant pulled a pistol from his pocket and aimed at deceased and snapped it, but the gun did not fire. Deceased grabbed it with his left hand and the gun snapped again. There was a struggle between the two and the gun fired with the bullet entering the face of the deceased at which time he fell to the floor. Jones ran from the house, and testified further, that the appellant came out on the porch and pointed the gun at him as he was leaving. Jones testified further he did not see any knife in the hands of the deceased, as testified to by some of the other witnesses.

Florence Wilson (sometime referred to as "Monkey") testified that she was in the front room with deceased and several others, when appellant came in and that Willie Jo told the deceased to leave because she had to go to the store and that deceased asked for his hat. Appellant said deceased didn't have a hat, and that deceased asked how he knew he did not have a hat, at which time, appellant pulled a gun and snapped it, but it did not shoot. The gun was in his right hand and deceased did not have anything in his hand. When the gun snapped, she grabbed her children and ran to the next room where she heard a gun fire. When she went back, the deceased was lying on the floor and she saw a yellow handled knife on the floor. When she left the room they were tussling. She saw Jones leaving the vicinity of the house, running from appellant. She heard appellant tell Jones to come back and he would shoot him because he was the cause of it all.

The coroner testified as to the wound found in the head of deceased and that death resulted from it. Officer Chambers of the Birmingham Police Department, who answered a call to the house, testified that upon his arrival, the appellant met him, and without anything being said beforehand, and before arrest; told the officer he was the one who did it and handed him a .22 caliber revolver with one fired shell in it. He observed the body of deceased and saw a fresh wound of some kind on the left hand of appellant. The revolver was impounded and was found to have several shells with firing pin or in-

dent markings on the rim of the unfired shells.

This is the substance of the state's testimony.

The appellant did not testify, but did offer several witnesses, whose testimony tended to establish his plea of self-defense. No one denied that appellant fired the shot, which apparently caused the death of the deceased.

Defense witness, Bridges, testified that he was in an adjoining room at the time he heard Willie Jo Wilson ask deceased to get out. That he (Bridges) stepped to the door and heard the conversation about the hat, heretofore referred to, at which time, deceased drew a yellow handled case knife from his coat and started stabbing appellant. He did not hear the pistol snap and saw the knife before he saw the pistol and heard the shot. He saw deceased stagger back and fall after the shot. He heard appellant tell Ed Jones to come back, he was the one who started it all. Jones was down the street a piece. He further said "Monkey" and Ed Jones were not in the room. He saw appellant's hand bleeding after the fight. Witness had had a beer to drink at the time. Willie Jo Wilson testified to the presence of the people and said, before the conversation with regard to the hat, that deceased said "He wants to shoot me," referring to appellant. She testified further that deceased drew a knife first and walked toward appellant before appellant drew the gun, at which time, she grabbed her grandbaby and ran. She heard the shot and then came back in the room where deceased fell and the knife fell on the floor. Defense witness, Tommy Sanders, testified also that after the conversation about the hat that deceased raised his hand with the knife first and then he heard a shot. He admitted that his testimony before the grand jury was somewhat at variance with his testimony on the trial. This, in substance, is the testimony offered by the appellant on the facts and disputed issue of self defense.

Murder in the second degree is the unlawful killing of a human being with malice, but without deliberation or premeditation. Miller v. State, 38 Ala.App. 593, 90 So.2d 166.

Malice may be presumed from the use of a deadly weapon in a killing unless circumstances of the killing disprove or rebut the presumption. See cases collected under Ala. Digest, Homicide, Key No. 146.

We hold, under the testimony, that the court properly overruled the motion to exclude the testimony and refused to give the affirmative charge for the appellant. There was no error in submitting this case to the jury.

The main argument for error in the record of the case at bar is the refusal of the court to give, at the request of the appellant, the following charge in writing: "2. I charge you that the burden is on the State to prove from the evidence beyond all reasonable doubt, that the defendant was not free from fault in bringing on the difficulty."

The case of Pate v. State, 42 Ala.App. 334, 163 So.2d 645, holds that it was error for the court to refuse a similar charge. Pate supra, cites Sterrett v. State, 31 Ala. App. 161, 13 So.2d 776, as authority for the holding with regard to this charge. In Sterrett, the court was held to be in error for refusing this identical charge, but the holding was based upon the failure of the court to correctly charge on this rule in his oral charge as follows: "When the evidence tends to show that there was a pressing necessity, * * * on the part of the defendant to take life, and that there was no reasonable mode of escape, the burden is on the state to show by the evidence that the defendant was at fault in bringing on the difficulty." The court held this was a correct statement of the law with one exception, that the trial court overlooked the degree of proof that it must be beyond a reasonable doubt, and the court held that charge 7, (identical with the one in the case at bar) called the

court's attention that this important phrase was left out, and therefore, charge 7 should have been given.

In the oral charge of the court in the case at bar, the court said: "When the evidence tends to show there was a present pressing necessity on the part of the defendant to take the life, and that there was no reasonable mode of escape, the burden is on the state to show by the evidence, beyond a reasonable doubt, that the defendant was at fault in bringing on the difficulty."

This charge by the court is not defective in the respect pointed out in the charge set out in Sterrett, supra, and eliminates the necessity of giving the charge 2 in question, in the present case, which is similar to charge 7 in Sterrett, supra.

In the case of Lakey v. State, 20 Ala. App. 78, 101 So. 537, this court said: "The burden which devolves upon the state is to satisfy the jury beyond a reasonable doubt, and the burden is not on the state to show the defendant was not free from fault, unless and until the defendant shows that he was in a position of peril and retreated if he was under the duty to retreat."

Therefore, we think charge 2 refused to appellant, was properly covered by the oral charge of the court and the court committed no error in its refusal. Title 7, § 273, Code 1940, Recompiled 1948; Fuller v. State, 43 Ala.App. 632, 198 So.2d 625.

Whatever is said in Pate, supra, as to refused charge 3 therein is hereby disapproved. Moreover "beyond *all* reasonable doubt" is without legal sanction.

The record in this case shows it was carefully tried by the trial court and the attorneys and this court concur in the statement made in the brief for the state, that "The record in this case is remarkably free of error. It is a monument to a learned trial judge and two fine attorneys."

In attempting to carry out our duty under Title 15, § 389, Code 1940, Recompiled 1958, we have searched the record and found no error to reverse and the case is due to be affirmed.

The foregoing opinion was prepared by W. J. Haralson, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.