265 So.2d 449

**Henry Alexander DARBY**

v.

**STATE.**

**7 Div. 134.**

Court of Criminal Appeals of Alabama.

June 20, 1972.

Rehearing Denied Aug. 1, 1972.

Love, Love & Caldwell, Talladega, for appellant.

William J. Baxley, Atty. Gen., and John A. Yung, IV, Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Talladega County indicted the appellant for unlawfully and intentionally, but without malice, killing one Albert McElrath by driving an automobile over him. Jury verdict, judgment, and sentence fixed punishment at one year and one day imprisonment in the State penitentiary.

Alex Mitchell testified that he had been at the IGA store located at the intersection of West Park and Hammett Streets in Sylacauga, Alabama, shortly after 5:00 in the evening of Saturday, November 28, 1970. He saw the deceased, Albert McElrath, buy a small bag of groceries, come out of the store, speak to him and one Willie Vinson, and then start walking up Hammett Street. He stated that he heard an automobile, driven by the appellant, come around the corner making a loud sound as its "motor roared." There was a slight upgrade of the street in the direction that McElrath was last seen walking. Some three minutes later, the appellant's car was seen headed at a fast rate up the street. There were some loud noises of crashing of vehicles, and when Mr. Mitchell arrived, he saw the body of the deceased, Albert McElrath, lying in the street in the right hand side of the road. Mr. Mitchell stayed to assist the officers in putting Mr. McElrath in an ambulance, and stated that two Sylacauga police officers assisted in the investigation. Mr. Mitchell further stated that when he arrived the appellant's vehicle was jammed between two other cars which it had apparently struck. He stated that the appellant was out in front of his own automobile groaning.

Dr. Charles Camp stated that he examined the body of Albert McElrath, Jr., on the night of November 28, 1970, at Madden's

and Sons Funeral Home in Sylacauga, and described multiple breaks and lacerations of the face, neck, ribs, pelvis, both legs and an arm; that these injuries were, in his opinion, the cause of death and that they were consistent, in his judgment, by being struck by an automobile.

Willie Vinson, age sixty-nine, who lived on Hammett Avenue in Sylacauga, and who had left the IGA store on his bicycle with some groceries, testified that he had seen Albert McElrath in the late afternoon leave the IGA store, walking up Hammett Avenue; that a few minutes later, he, himself, spoke to one Albert McElrath, got off his bike, and started pushing it up Hammett Avenue when he heard the accident. Mr. Vinson described the scene as follows:

"A. Before I got to his 'partment I heard a car comin'. It was just ROARIN' (makes a roaring sound) it was just a comin'. Well, I didn't pay it t-o-o-o much attention and then I did too . . . somethin' told me to get a little further . . . then it come to whats just hitting that telephone pole . . . well, then it did kindly get my attention kindly stiffly . . . I come just gettin' a little further still cause that was gettin' close . . . then that guide wire . . . it set afire . . . then after then look like I heard another kind of rumblin' it just . . . (makes sound) . . . just like that . . . I got back then right close to the . . .

"Q. Just a minute . . .

"A. To the bank . . .

"Q. Well, you go ahead and tell it and then I'll . . .

"A. O-h-h-h that car was really rollin' . . . I just tell you . . . I got scared then . . . I GOT SCARED . . . ain't no two bits about it. I got up just close as I could to that bank . . . and that car come 'bout that close to me . . .

"Q. About that close to you?

"A. Ya, sir.

"Q. About two feet . . . all right now . . .

"A. Just blowed right by me."

Following this, Mr. Vinson testified that the car went up a bank, hit a telephone pole, came off, and then came partly down the bank and snapped a guide, or guy, wire to a second telephone pole, and that he next heard a loud bump as it reentered the street. He continued his testimony as follows:

"Q. Well, after this was all over did you ever see the man laying in the street?

"A. Yes, sir . . . but when the car like to hit me it went on hit 'dem hedge bushes . . . tore 'dat guide wire down . . . and tore a newspaper box down . . . I was lookin' right at it . . . it jumped between them houses . . . the Wright's house . . . hit 'dat red car and side swiped his daughter's car and run into 'dat platform . . . and 'dat boy was hollering, 'Oh, my neck . . . oh, my neck . . . and when that happened I was down there and 'de polices was 'dere . . . they come . . . and when they got 'dere . . . that whole crowd of chil'ren was coming from the north . . . they was all hollering, 'Oh, they killed a man. Oh, they killed a man. It was J. C. somethin . . . somethin . . . . .

"MR. LOVE: J. C. Richardson.

"A. Yea . . . 'It was J. C. Richardson.' I said it can't be him . . . I run down 'dere . . . I knowed in my mind it was McElrath . . . the police was 'dere and 'de say don't touch nothin' just go on home . . . I just got off the road there and stand there . . . .

"Q. Did you ever see the man before he was moved . . . did you ever see them making any pictures? Or rolled him over or anything?

"A. I just seed him 'dere in the street . . . didn't see him no more . . . I went on to the house.

"Q. Did you see him that night to recognize who he was?

"A. Where 'bouts?

"Q. There in the street.

"A. No . . . not when he dead.

"Q. I want to back up a little bit Mr. Vinson . . . you said that you . . . after that car passed you you saw it go over and hit on that row of hedges . . . .

"A. Oh, yes sir.

"Q. And straddle a fence . . . knocked down a mailbox . . . go on in and hit in between these two cars here . . . .

"A. Went through them hedges and then it struck a red car . . . ."

Lt. Pharoah Bryant of the Sylacauga Police Department testified that at 5:58 in the late afternoon of Saturday, November 28, 1970, he received a call to proceed to Hammett Avenue in Sylacauga. He stated that it was semi-dark when he arrived, and he observed the body of a colored man in his late fifty's lying in the right hand lane toward the center line of the street. He stated that the man's feet were two feet from the curb, and his body was lying at an angle toward the center of the street. He stated that he found one shoe which, in his judgment, belonged to the deceased. The shoe was near a telephone pole approximately forty-three steps, or 129 feet, from where the body of the deceased was lying. He stated that he found the other shoe, which matched, on the body of the deceased. He stated that several persons at the scene identified the deceased as Albert McElrath, and that, in his judgment, the man was dead when he arrived at the scene of the accident. He stated that the appellant was driving a yellow Chevrolet Super Sports with a black vinyl top, and that it was against a red Chevrolet which it apparently struck in coming to rest. In his investigation the next morning, Lt. Bryant noticed yellow paint among the splinters of a telephone pole, and chips or scraps where an object apparently struck the pole a short time before; that a guy wire was broken off a second telephone pole, and that part of a hedge was torn down; that there were blood stains on the front hood and windshield of the yellow Super Sports Chevrolet when he observed same the following day at Byrd's Garage. Bryant further testified that clothing belonging to deceased was delivered to the State Toxicologist and flecks of yellow paint were removed from the clothing which matched the paint submitted as being yellow flecks from a 1968 yellow Chevrolet Super Sports car submitted for examination November 30, 1970; that a chrome mirror removed from the suspect's car contained specks of blood which matched the blood stains found on deceased's clothing. Lt. Bryant further stated, on cross-examination, that some girls, whom he had talked with at the scene of the accident, told him that two cars had come by drag racing a short time before the incident in question.

It was stipulated that the appellant had drank a half pint of whiskey since the noon hour and had not had dinner as of the time of the accident.

Sgt. Kelley and Officer Patterson, who arrived at the scene pursuant to the police radio call, stated that they received their request for assistance at 5:58, and upon arrival at Hammett Street in Sylacauga found Lt. Bryant there investigating an accident where a colored male had been struck and was lying in the street; that his name was McElrath; and that the appellant at that time was lying on the ground and was later taken by ambulance to a hospital; that the appellant's car was damaged and had struck

a parked Buick and also a parked Chevrolet automobile; that on observing the appellant at the scene, in their judgment, the appellant was "under the influence." Sgt. Kelley testified that from the first telephone pole to the second one was a distance of 90 feet, and from the second pole to where the body lay was a distance of 134 feet. He further testified that the body lay 358 feet from where the appellant's vehicle came to rest.

Officer Sylvester DeBardeladin testified that on the night of November 28, 1970, he and Officer Wilson were on duty and received a call to proceed to the hospital where the appellant had been taken. The two of them went into the emergency room and saw the appellant. There were a doctor and two nurses present; that later Sgt. Kelley came in, and at that time the appellant asked them, "What did I hit."

Lt. Pharoah Bryant was recalled, and, on cross-examination, he testified that some girls who were present at the scene of the accident, told him that between seven and fifteen minutes before the deceased was struck, a white car and a truck were drag racing up Hammett Avenue; one girl had given Officer Bryant a statement twelve days after the accident in which she stated the drag racing took place about three or four minutes before the appellant came up the road. He stated also that the appellant asked him at the scene, "Who did I hit?"

Officer Theodore Wilson was then called to the stand, and testified that he had been present at the emergency room at the Sylacauga hospital on Saturday, November 28, 1970, together with Officer DeBardeladin and Sgt. Kelley, and that in their presence, and in the presence of the doctor, the appellant asked him, "Who did he hit," and then said, "What did he hit."

The appellant moved to exclude the State's evidence, which was denied.

The appellant presented the testimony of Gail Annette Duffey and Sandra Vinson, a daughter of Willie Vinson, who testified that on Saturday, November 28, 1970, they were present on Hammett Avenue in Sylacauga and saw two vehicles, one a white car, and the other a truck, racing up Hammett Avenue about 6:00 in the evening. They heard a noise and something fell off one of the vehicles; that this was about three to five minutes before the appellant came up Hammett Avenue where he glanced off a telephone pole, went through some hedge bushes, and then into two parked cars. Sandra Vinson's younger sister was with the two older girls, and each of them corroborated the other's story. Their estimates of the appellant's speed varied from twenty-five to seventy, but that it did get faster.

The appellant also presented the testimony of Johnny Paul Kelley, who testified that he knew the deceased and the appellant, and that he had been near the IGA store on the evening of November 28, 1970, near dark; that the deceased had spoken to him as he came out of the store headed toward Hammett Street; that he heard a pickup truck and a white car drag racing up Hammett Street; that he heard a loud bump; that he did see the appellant's car go up the street, but when he got up there he saw the body of the deceased lying in the road and some police were there taking pictures.

Officer Pharoah Bryant was recalled, and testified that the speed limit near the IGA store was twenty-five miles per hour.

The appellant testified that he, after getting off work on Saturday, November 28, 1970, had stopped and bought a half pint of whiskey, which he had consumed, and was driving his Chevrolet Super Sports up Hammett Avenue between twenty-five and thirty miles per hour just before dark when he had to stop and saw two cars driving past him hurriedly up Hammett Street; that he started up Hammett and saw what appeared to be a man lying in the road, and that he swerved to avoid hitting him and went up an embankment, glanced off a telephone pole, struck a guide wire to another pole, then lost control of his car as he was

thrown against the windshield, which cut his head and arm; that his car continued through some hedges and then struck a parked car as he was trying to guide it to rest. He stated that he was driving about thirty-five miles per hour when he first saw the body and that the car did accelerate after he swerved and lost control of it; that he was doing some fifty to sixty miles per hour after the car accelerated.

Mr. Willie Vinson was recalled by the State, and he, on rebuttal, was asked about a car or truck dragging up the street shortly before this accident, and his answer was, "I ain't seen no cars."

## I

The appellant contends that the corpus delicti was not proven in that the deceased was not properly identified, and that the appellant's motion to exclude the State's evidence should have been granted. In Barnett v. State, 27 Ala.App. 277, 171 So. 293, we find the following:

"Manslaughter in the first degree as defined at common law and under statutes declaratory thereof consists in the unlawful killing of a human being without malice either expressed or implied. As applied to cases where persons are killed by automobiles, we have said that: 'If there is evidence tending to show that the blow struck by the automobile being driven by defendant was intentional, or the automobile was being so driven as to evidence a wanton and reckless disregard of human life at the time and place and under the circumstances,' this would be voluntary manslaughter. Curlette v. State, 25 Ala.App. 179, 142 So. 775, 776."

Further, in Gills v. State, 35 Ala.App. 119, 45 So.2d 44, cert. den. 253 Ala. 283, 45 So.2d 51, the evidence, when tested by either a motion to exclude or request for the general affirmative charge in cases such as the case at bar, lays down the following:

"In approaching this review we are required to take the evidence favorable to the prosecution as true and accord to the State all legitimate inferences therefrom. Jones v. State, 33 Ala.App. 451, 34 So.2d 483.

" 'Manslaughter, by voluntarily depriving a human being of life, is manslaughter in the first degree; and manslaughter committed under any other circumstances is manslaughter in the second degree.' Title 14, Sec. 320, Code 1940.

" 'In order to constitute manslaughter in the first degree, there must be either a positive intention to kill, or an act of violence from which, ordinarily, in the usual course of events, death or great bodily injury may be a consequence.' Harrington v. State, 83 Ala. 9, 3 So. 425, 428.

" 'If the defendant in this case so recklessly drove an automobile along the public highway and in such manner as to endanger human life, and death resulted, the act would be manslaughter in the first degree whether the positive intention to kill was proven or not.' Reynolds v. State, 24 Ala.App. 249, 134 So. 815, 816."

■ Under the above, we are of the opinion that the trial court correctly denied the appellant's motion to exclude the State's evidence and submitted this cause to the jury for their determination.

## II

■ The appellant argues that the trial court did not properly define "reasonable doubt" to the jury. We have carefully reviewed the trial court's oral charge and find that at the conclusion of same, the appellant made no exception, but stated, "Satisfied."

The situation thus presented is controlled by Allison v. State, 281 Ala. 193, 200 So.2d 653, as follows:

"Counsel for appellant also contend that the court erred in a portion of its oral instructions to the jury. After reading this portion of the oral instructions, it is our conclusion that it correctly and properly

stated the legal principle involved, and is in no wise objectionable. Regardless, no objections were made to the oral charge of the court and in the absence of such objections made during the trial, the question cannot be raised for the first time on appeal. Brackin v. State, 31 Ala.App. 228, 14 So.2d 383." See also Segers v. State, 283 Ala. 682, 220 So.2d 848.

### III

Lt. Bryant testified that the speed limit on this residential street was twenty-five miles per hour. The appellant testified that he was driving at a speed rate of thirty-five miles per hour when he lost control of his vehicle and thereafter ran over the deceased.

In reviewing the propriety of the refusal of the general affirmative charge requested by the appellant, we are required to consider the evidence in the most favorable light for the prosecution. Harris v. State, 36 Ala.App. 620, 61 So.2d 769, and authorities cited, and we believe the trial judge properly denied this charge in this case.

### IV

The appellant further argues that Charge No. 8 was improperly refused. In this charge, the word "proof" is misspelled; the word according to the record is shown as "proff." This charge was therefore properly refused. State v. Owen, 279 Ala. 281, 184 So.2d 362; Griffin v. State, 284 Ala. 472, 225 So.2d 875.

We have carefully reviewed this entire record, as we are required to do by the provisions of Title 15, Section 389, Code of Alabama, as Recompiled 1958, and find same to be free from error. The judgment is therefore due to be and the same is hereby

Affirmed.

CATES, ALMON and HARRIS, JJ., concur.