288 So.2d 807

Lera **CARMICHAEL**

v.

**STATE.**

7 Div. 234.

Court of Criminal Appeals of Alabama.

Jan. 15, 1974.

William J. Baxley, Atty. Gen. and Don C. Dickert, Sp. Asst. Atty. Gen., for the State.

———◆———

H. Merrill Vardaman, Anniston, for appellant.

TYSON, Judge.

The Grand Jury of Calhoun County, Alabama, indicted the appellant for the first degree murder of Bobby Harris by shooting him with a pistol. The Jury found the appellant guilty of murder in the second degree, and its verdict and judgment fixed punishment at ten years imprisonment in the penitentiary.

Between 2:00 and 3:00 a. m. on the morning of May 20, 1972, the deceased and his wife, Frances Harris, were overheard having an argument in their duplex apart-

ment by the next door neighbors, Dorothy Hutchinson and her mother, Mary Hutchinson.

Dorothy Hutchinson testified that her mother telephoned Frances Harris' mother, Lera Carmichael, the appellant, and informed her of the argument next door. At about 3:00 a. m., Frances Harris came over to the Hutchinson apartment and used the telephone to call the police. The witness further testified that, while Frances was doing this, Lera Carmichael, the appellant, had arrived and gone into the Harris apartment. The witness stated that the appellant had her two sons and two daughters with her. After the appellant went inside, Dorothy Hutchinson said she heard "fighting." When the appellant and her family came out of the Harris apartment, Frances Harris left the Hutchinson apartment to join the appellant at the appellant's car, parked on the street. The witness stated that everyone got into the car, except the appellant, one of her sons, Ray, and Bobby Harris. The witness further stated that when Bobby Harris attempted to pull his wife and their two children from inside the car, Bobby and Ray got into a "fight," which lasted "five or ten minutes." Then the appellant's other son and two daughters joined in the affray. Then, Dorothy Hutchinson testified, Ray picked up a board and threw it at Bobby Harris. Bobby Harris picked up the board and threw it at the appellant, who was standing by the car. The appellant pulled a pistol from her purse and fired a shot at Bobby, who ran toward a nearby tree, fell, walked a short distance, then fell again. The witness stated that "Lera Carmichael's sons picked up the pistol." The witness testified that Bobby Harris did not have anything in his hands at the time he was shot. This witness observed the event from her window, which faced the illuminated street.

The appellant's testimony contradicted that of the State's witness, Dorothy Hutchinson. The appellant testified that only her son, Marvin Carmichael, accompanied her to the Harris apartment. When they arrived, she went to the door of the apartment, knocked, then entered, and saw Bobby Harris holding Frances. The Harris' two children were crying. The appellant took the children outside while Bobby "pulled" at her. At this time appellant's son, Marvin, got out of the car and tried to pull Bobby Harris away from the appellant. The appellant put the children into the car where Frances Harris was already seated. When the appellant attempted to get into the car, Frances screamed, "Look out, mama"; that the appellant looked back and Bobby was "coming down over" her with a board. The appellant threw her left arm up for protection, and Bobby struck her, knocking her down on her knees. She stated that as he attempted to strike her again, she reached under the front seat of the car and got her pistol. From a kneeling position, she fired one time at Bobby. She stated that, after firing she dropped the pistol and "never did get it." She stated that Bobby Harris ran away from her, after she fired, then ran back toward her. About this time the police arrived. Her daughter's (Frances Harris') testimony corroborated that of the appellant.

Ray Carmichael testified that after the appellant went to the Harris apartment, he followed; that by the time he arrived, Bobby Harris had already been taken to the hospital.

Dr. A. N. Taylor testified that he treated the appellant sometime after 4:30 a. m. on May 20, 1972, in the emergency room of Anniston Memorial Hospital. He stated that her left arm had an acute injury, evidenced by swelling, pain, tenderness, and hematoma, and that the injury had been inflicted within a few hours prior to treatment.

Dr. K. K. Ratanaubol, a member of the Department of Pathology of Anniston Memorial Hospital, testified that on May 20, 1972, he performed an autopsy on Bobby Harris. He stated that his examination revealed scratch wounds on the forehead of the deceased, and a bullet wound in the up-

per part of the left buttock. The bullet traversed an upward path after entry, lacerated a vein, and lodged in the chest area. In his opinion death was caused by severe blood loss. He further stated that he found some dark gray areas at the bullet's point of entry into the body, but was not able to conclude that such discoloration was caused by powder burns.

## I

The appellant contends that the State failed to prove a prima facie case of second degree murder.

■ Murder in the second degree is the unlawful killing of a human being with malice, but *without deliberation or premeditation*. Smith v. State, 47 Ala.App. 513, 257 So.2d 372; Young v. State, 47 Ala. App. 674, 260 So.2d 406; Miller v. State, 38 Ala.App. 593, 90 So.2d 166; Warren v. State, 34 Ala.App. 447, 41 So.2d 201.

In *Miller,* supra, we find:

" 'Legal Malice' as an ingredient of murder is an intent to take human life without legal excuse, justification or mitigation, and it may be presumed from the use of a deadly weapon, unless the evidence which proves the killing rebuts the presumption. Coates v. State, 1 Ala. App. 35, 56 So. 6; Warren v. State, supra."

■ Here, the appellant's use of the pistol presented sufficient evidence from which the Jury could infer that she acted with malice.

The fact that the appellant denied having intended to kill the deceased is not a proper criteria.

In Rogers v. State, 49 Ala.App. 78, 268 So.2d 859, this Court noted:

"However, as to second degree murder, the crime for which appellant stands convicted, the law in Alabama is such that a finding of specific intent to kill is unnecessary to support a conviction.

Smith v. State, 154 Ala. 31, 45 So. 626; Titus v. State, 117 Ala. 16, 23 So. 77; Fowler v. State, 155 Ala. 21, 45 So. 913 . . . . ."

■ The conflict in the evidence presented a question for the Jury to determine, and the evidence was sufficient, if believed by the Jury, under the required rule to support the verdict. Miller v. State, 38 Ala.App. 593, 90 So.2d 166; Rogers v. State, supra.

## II

■ The appellant contends that the trial court's oral charge generally placed too great a burden on the appellant.

We have examined the oral charge and find that the trial judge did charge the Jury on the elements of self-defense.

Moreover, at the conclusion of the oral charge to the Jury, the appellant's trial attorney announced, "The defendant is satisfied, Your Honor."

As stated by this Court in Massey v. State, 49 Ala.App. 341, 272 So.2d 267, cert. den. 289 Ala. 747, 272 So.2d 270:

". . . Where, as here, appellant's counsel did not make an exception to the oral charge, but to the contrary, replied, "Satisfied," and did not ask for any clarifying instructions, nothing is here presented for review. Cox v. State, 280 Ala. 318, 193 So.2d 759; Allison v. State, 281 Ala. 193, 200 So.2d 653; Passmore v. State, 47 Ala.App. 189, 252 So. 2d 115; Darby v. State, 48 Ala.App. 421, 265 So.2d 449."

We have carefully examined this record, as required by Title 15, Section 389, Code of Alabama 1940, and find same to be free from error. The judgment is due to be and the same is hereby

Affirmed.

All the Judges concur.