296 So.2d 750

**Eddie Davis HOLCEY**

v.

**STATE.**

**5 Div. 178.**

Court of Criminal Appeals of Alabama.

May 21, 1974.

Rehearing Denied June 4, 1974.

Samford, Torbert, Denson & Horsley, Opelika, for appellant.

William J. Baxley, Atty. Gen. and Frederick T. Enslen, Jr., Sp. Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Lee County charged the appellant with the first degree murder of George Avery by shooting him with a gun or pistol. The Jury's verdict found the appellant guilty of murder in the second degree and fixed punishment at twenty years' imprisonment. The trial court entered its judgment in accordance with this verdict.

By stipulation, the State Toxicologist's, Dr. Roper's, testimony was "that George Avery died as a result of two bullet wounds, one in the head and the other in his chest."

Shortly after 8:00 on the evening of September 8, 1972, the appellant, Eddie Davis Holcey, came to the home of Jean Antonette Ray at 1313 Cherry Avenue in Opelika, Alabama.

Jean Antonette Ray testified that she, Mary Ann Lewis, Barbara Jean Menefee, and the deceased, George Avery, had just returned to her home at about 8:20 on the evening in question, gotten out of their automobile, and that she and the other two

women had gone into the house when they saw the appellant talking with the deceased on the front porch of her home. She stated that she saw something in the appellant's hand which "resembled a pistol" and that following an argument between the two men, she heard three shots; that she telephoned the police, and they determined that George Avery was dead upon their arrival at her home.

Barbara Jean Menefee corroborated the testimony of Jean Antonette Ray to the effect that while the two men were arguing on the front steps of the house, she saw the appellant slip and fall; that she thought she heard the appellant say, "If you make a step, I'll kill you"; that she did not see any weapon in the deceased's, George Avery's, hand; and that she heard three shots.

Rufus Rowell, Jr. and Sylmar Frazier stated that they had gone by the home of Jean Ray, and that they knew appellant dated Jean Ray, as did George Avery; that they had been waiting there when George Avery and the three women arrived, and that they observed the following:

"Q. And you say before you got there you heard the fuss?

"A. Yes, sir.

"Q. Who was fussing?

"A. Sounded like Eddie and George was arguing. When we got down to the corner down there, fixing to walk around the corner, Eddie was stumbling, getting up off—you know, like he was getting up off the ground; and then George was standing on the ground; but after that George kept backing up, he found out, I guess, Eddie had his gun cause he had it in his hand down beside him.

"Q. Now, you saw a gun in Eddie Holcey's hand at that time?

"A. Yes, sir.

"Q. And you say George Avery was backing up?

"A. Yes, sir.

"Q. Which direction was he backing?

"A. He was backing towards the steps.

"Q. All right. Did he back up the steps?

"A. Yes, sir, he walked on up, he got to the foot of the steps, he turned around and walked up sideways, looking back out towards Eddie.

"Q. All right. What, if anything, did you hear said between Eddie Holcey and George Avery at that time?

"A. George told Eddie, said, 'You have pulled a gun on me once before,' said, 'You got it now, you better use it,' and walked on up on the steps, and he said a bunch of cuss words and cussing and schuffling going on.

"THE COURT: Who said a couple of cuss words?
"A. George Did.

"MR. HORSLEY: George Avery.

"Q. George Avery. Was that after he told Eddie Holcey, 'You done pulled a gun on me once before and now you got one, you better use it?'

"A. Yes, sir.

"Q. All right. What occurred then after that?

"A. I was—I went to turn and walk off, back off, Sylmar walked on up in front of Eddie, Eddie was in the middle and I was behind standing on the sidewalk, and the next thing I knew when I turned to walk off I heard three shots fired and I turned around.

"Q. Now, at the time you—Right before you heard the three shots fired, was the gun still in the hands of Eddie Holcey?

"A. Yes, sir. When he was running I seen the gun was still in his hand cause he flew past—run past me.

"Q. Well, now, this was before the shooting, the gun was in Eddie Holcey's hand?

"A. Yes, sir."

The above testimony was corroborated by Sylmar Nolan Frazier.

Opelika Police Lieutenant Clifton Waller testified that he was on routine patrol on September 8, 1972, when he received a call at approximately 8:20 in the evening to go to a residence located at 1313 Cherry Circle in Opelika; that he was accompanied by Officer Gary Knight, and upon arrival at this address, he found the body of a man, whom he determined to be George Avery, lying in the yard with a bullet wound in his chest and one in his head. He stated that, in his opinion, Avery was dead when he arrived. He further stated that upon lifting the body, he found an open pocket-type knife lying under the body. He stated that he found no other weapon at or near the scene.

This testimony was also corroborated by Opelika Detective Dan Davis.

The appellant's motion to exclude the State's evidence was overruled.

The appellant testified in his own behalf and stated that he had gone to the home of Jean Ray on the evening in question. He stated that the deceased was coming at him with a knife and had knocked him down prior to that. He stated that he began backing away. Appellant did admit that he had carried a .32 nickel-plated revolver with him on the evening in question. He stated that he only fired it after being struck by the deceased and cut by him.

I

The appellant contends that the State failed to prove a prima facie case of second degree murder.

Murder in the second degree is the unlawful killing of a human being with malice, but without deliberation or premeditation. Smith v. State, 47 Ala.App. 513, 257 So.2d 372; Young v. State, 47 Ala. App. 674, 260 So.2d 406; Miller v. State, 38 Ala.App. 593, 90 So.2d 166; Warren v. State, 34 Ala.App. 447, 41 So.2d 201.

In *Miller*, supra, we find:

" 'Legal. Malice' as an ingredient of murder is an intent to take human life without legal excuse, justification or mitigation, and it may be presumed from the use of a deadly weapon, unless the evidence which proves the killing rebuts the presumption. Coates v. State, 1 Ala. App. 35, 56 So. 6; Warren v. State, supra."

Here, the appellant's use of the pistol presented sufficient evidence from which the Jury could infer that he acted with malice.

The conflict in the evidence presented a question for the Jury to determine, and the evidence was sufficient, if believed by the Jury, under the required rule to support the verdict. Miller v. State, 38 Ala.App. 593, 90 So.2d 166; Rogers v. State, 49 Ala.App. 78, 268 So.2d 859; Carmichael v. State, 52 Ala.App. 25, 288 So.2d 807; Williams v. State, 52 Ala. App. 694, 288 So.2d 753.

II

We have examined the oral charge and find that the trial judge did charge the Jury on the elements of self-defense.

Moreover, at the conclusion of the oral charge to the Jury, the appellant's trial attorney announced, "We have no exceptions, Your Honor."

The trial court then gave two of the written requested charges and denied eight others. We have carefully examined each of these and determined that, under the conflicting evidence, the denial of the af-

firmative charge and the affirmative charge with hypothesis was proper in the case at bar. Title 7, Section 273, Code of Alabama 1940.

We have carefully examined this record, as required by Title 15, Section 389, Code of Alabama 1940, and find same to be free from error. The judgment is due to be and the same is hereby

Affirmed.

All the Judges concur.