TYSON, Judge.
Appellant was indicted for unlawfully killing Gertie Mae Boswell “by shooting her with a pistol.” The jury found the appellant guilty of murder in the second degree and fixed punishment at ten years imprisonment. The trial court then entered judgment, setting sentence in accordance with this verdict.
Joe Lewis Berry testified that on January 11, 1975, he was living at the home of his mother, Gertie Mae Boswell, on Auburn Street in Montgomery, Alabama. He stated that he was awakened that morning by the sound of a pistol shot and after walking into the living room of their home, he saw his stepfather, the appellant, Lee Boswell, standing over the body of his mother, Ger-tie Mae Boswell. He stated that the appellant had a pistol in his hand, which was pointed down, and that he asked the appellant what had happened, to which the ap *152 pellant replied, “She got shot in the arm.” He stated that he then saw that his mother was shot in the heart, that he picked up her body and placed her on a small couch in the room. He stated that a knife was lying on the floor, and that he picked it up and placed it on a table. He stated that the knife belonged to his stepfather. He stated that this occurred between 8:00 and 9:00 o’clock on the morning in question.
On cross-examination, Joe Lewis Berry testified that he observed blood on the hand of the appellant, and that he observed blood coming from the chest wound of his mother.
Robert L. Ingram testified that as a Montgomery Police Officer, he answered a call at 363 Auburn Street, Montgomery, between 8:00 and 9:00 on the morning of January 11, 1975. He stated that when he arrived he went into the living room of the home and observed the- victim, Gertie Mae Boswell, lying on a sofa. He stated that he spoke to Joe Lewis Berry and that he saw a pocket knife lying on the floor. He stated that when he spoke to the appellant, Lee Boswell, he stood up, and as he did so, a .22 caliber pistol fell from between his legs. He testified that he seized both weapons and placed the appellant under arrest. He testified that the .22 caliber pistol was a nine-shot revolver, and in his best judgment only one or two had been fired, and the rest were live rounds. He testified that he examined the body of Mrs. Boswell and noticed a wound in her left chest.
Mary Wisdom testified that she was a toxicologist with the Alabama Department of Toxicology. She stated that she examined the body of' Gertie Mae Boswell at 363 Auburn Street, Montgomery on the early morning of January 11, 1975. She testified that she found a wound on the left chest near the heart. She testified that she performed a blood alcohol test on the body of Mrs. Boswell, and the level of alcohol in the blood was .30. She stated that this level would indicate that the person would be highly intoxicated. She testified that she observed the pistol, and that it was a .22 caliber J. C. Higgins, Model 88, nine-shot revolver with the Serial No. 768080.
Dr. Richard A. Roper, State Toxicologist, testified that he performed the post-mor-tem examination of Gertie Mae Boswell at the Ross-Clayton Funeral Home. He stated that she was a black female, approximately forty-three years of age, and that the cause of death was hemorrhage and shock associated with a gunshot wound to the left chest near the heart. He stated that he removed a small caliber bullet from the body of Mrs. Boswell and turned it over to Mr. Charles Smith of the Department of Toxicology.
Charles Wesley Smith, State Toxicologist, testified that he received a .22 caliber pistol from Mrs. Mary Wisdom of his department, and that upon examination he determined the pistol had eight live rounds and one spent cartridge case. He testified that he made a comparison of the bullet that was turned over to him by Dr. Roper with bullets fired from the pistol in question, and that, in his opinion, the bullet was “possibly fired from the same weapon.”
Over objection, Dr. Smith was allowed to state the following concerning his examination of the pistol:
“ . . . [I]s that weapon likely to go off accidentally, in your opinion?
“A. This weapon would not be classified as one with a hair trigger, which is a common term. It actually has more than average pull on the trigger.
“Q. Has more than average pull on the trigger?
“A. Yes, sir. This is — by firearms standard this is a relatively cheaply made weapon. And, generally, on the cheaper weapons it gets harder and harder to pull the cheaper you go. Some of them are very hard to pull the trigger. This one is relatively firm. Even on single action it is not what you would call a hair trigger, although it takes considerably less force that way. But fired in the double action mode, I would say it would be difficult to fire it accidentally.”
The pistol in question was then admitted into evidence.
Jesse Holloway testified that he was a friend of the appellant, Lee Boswell. He *153 testified that he first saw the appellant on January 11, 1975, shortly after 7:00 in the morning on Holt Street in Montgomery. He stated that the appellant asked him to go with him, that he wanted to pick up his little boy. He stated that the appellant’s girlfriend, Pearlie Mae Jones, was also in the automobile. He stated that they drove out to the Mobile Heights section of Montgomery, and then drove back over to Auburn Street to the home of the appellant’s ex-wife, Gertie Mae Boswell. He stated that Pearlie Mae Jones was driving, that he was seated on the back seat, and that the appellant was seated on the right hand passenger side of the car. He stated that they pulled up in front of Gertie Mae Boswell’s home, that the appellant got out of the car and went into the house for just a few minutes. He stated that he did not hear anything, but in a few minutes, the appellant called to him to call an ambulance. He stated that he got out and went into the house and saw Gertie Mae Boswell lying on the floor. He said that he saw the appellant standing over her with a pistol, and that he picked up Mrs. Boswell and laid her on the sofa. He stated that he saw the appellant put a pistol in his pocket. He said that it was a .22 caliber pistol, and that the appellant had previously shown the gun to him. Under examination by the District Attorney, he stated, “that is it,” referring to the weapon seen on the morning of the homicide. He further stated that he and appellant had formerly worked together for the Coca Cola Bottling Company.
On cross-examination, he testified that the purpose of their driving out to the Mobile Heights section was to find the appellant’s little boy, and that when he did not find him, they decided to go over to Mrs. Boswell’s home to look for him.
Police Officer Robert L. Ingram was then recalled and he identified the knife which he found at Mrs. Boswell’s residence.
Charles Kennedy testified that he lived at 720 Erskine Street in Montgomery. He stated that his wife was a sister to Gertie Mae Boswell. He stated that on the morning of January 11,1975, the appellant came by his home between 8:30 and 9:00 o’clock and told him that he was looking for his son, Lee Andrew Boswell, Jr. He stated that the boy was also the son of Gertie Mae Boswell, and that the appellant was divorced from her. He said that he advised the appellant that he had not seen his son that day, and the appellant told him he had carried his son to Gertie Mae Boswell’s home on Friday evening to spend the night, that when he went back the next day he could not find him. Mr. Kennedy further stated that the appellant said that morning, “If I don’t find my kid this morning, somebody is going to die.” He stated that Jesse Holloway and Pearlie Mae Jones were also in the automobile with the appellant when he came by his home between 8:30 and 9:00 o’clock that morning.
Pearlie Mae Jones testified that she was the girlfriend of the appellant. She stated that she drove the appellant in his automobile on the morning of January 11, 1975, to the Mobile Heights section in Montgomery in order for the appellant to look for his son, Lee Boswell, Jr. She testified that Jesse Holloway rode in the car with them. She testified that they went by the home of Charles Kennedy, that the appellant had a conversation with him, and they then went to the home of Gertie Mae Boswell to look for Lee Boswell, Jr. She stated that they pulled up to 363 Auburn Street, that she turned off the motor, and the appellant got out and went into the house. She stated that she saw Mrs. Boswell open the door, saw the appellant go into the house, and a few minutes later she heard the appellant call out, “Call the ambulance.” She stated that Mr. Jesse Holloway then went into the house. She stated that she did not hear any argument or hear any shots fired.
The appellant called Jesse Holloway to the stand and he testified that he did not hear the appellant make any threats to Charles Kennedy about killing anybody on the morning of January 11, 1975, before going over to Auburn Street.
Lee Boswell testified that he was living at 2660 Laverne Street in Montgomery on the morning of January 11, 1975, and was *154 employed by the Coca Cola Bottling Company. He testified that he had formerly been married to Gertie Mae Boswell, that she had children by a previous marriage, and that he had one child, a son, Lee Boswell, Jr., by her. He stated that Lee, Jr., had been living with him after his mother-in-law died, and that the other children lived with Gertie Mae Boswell. He stated that he had been over to the Boswell home on Friday afternoon, that Lee, Jr., spent the night there, and that when he went back the next day to pick him up, he was not there. He testified that on the morning of January 11, 1975, he picked up Pearlie Mae Jones and Jesse Holloway and they rode with him when he went looking for his son. He stated that they drove over to the Mobile Heights section and upon not finding him there, they stopped by the home of Charles Kennedy, then drove over to the Boswell home on Auburn Street. He stated that Mrs. Boswell looked as if she had been drinking, that he did not know how much, and that this was between 8:30 and 9:00 o’clock in the morning. He stated that she opened the door, that he went inside and asked her where his son, Lee, Jr., was. He stated that she told him that she did not know and that she said, “I have something for you,” and placed her hand inside her bosom, and as she began pulling her hand out, he saw that she had a knife there. He said that he pulled the pistol from his pocket as he saw her pulling out the knife, and that he was simply holding the pistol in his hand when it went off, cutting a gash in the big finger of his right hand, and that he had to have his hand bandaged when they took him to Police Headquarters. He stated that a few minutes later after the gun went off, Joe Lewis Berry, his stepson, came into the room and he was picking up the body of the deceased, that he told him to get someone to call for an ambulance. He said that he did not know how badly wounded the deceased was, and he called out, “Call the ambulance.” He said that he did not have any reason to “fuss” with anyone and that he and his former wife had had an understanding about the visitation rights with the children, that they had been separated about five or six years. He testified that he had always supported the children.
On cross-examination by the District Attorney, the appellant demonstrated how the incident occurred:
“Q. Well, I will tell you this — where was your hand when you put that weapon in it? You show the jury how you took that weapon in your hand?
“A. Just like that.
“Q. Just like that. Stand up. You pulled it out of your pocket?
“A. Yes, sir.
“Q. And you put in your hand. Where was your hand?
“A. (Witness indicating.)
“Q. Just like that? That is the way you put the weapon in your hand, and that bullet hit Mrs. Boswell in the heart?
“A. I don’t know where the bullet went.
“Q. But that is what you are telling the jury? You laid that weapon in your hand just the way you demonstrated' — bring it up a little higher, now.
“A. The exact height and all, and the certain position I had it-—
“Q. And the weapon went off and shot her in the heart?
“A. Yes, sir.
“Q. And you don’t know how tall she is?
“A. No, sir.
“Q. You laid it in your hand just like that?
“A. Yes, sir.
“Q. Pull the trigger on the weapon.
“A. (Witness clicks gun.)
“Q. You have to apply a lot of pressure, don’t you? You have to apply pressure, don’t you, Mr. Boswell?
“A. Yes, sir.”
The appellant called Detective H. E. Hicken of the Montgomery Police Department, who testified that he took a statement from the appellant on the morning of January 11, 1975, at about 11:00 a. m. at Police Headquarters. He stated that he observed a wound on the hand of the appellant and blood on his finger. He stated *155 that the appellant told him at Police Headquarters that he shot his finger accidentally when he pulled the trigger of the gun at the home of Mrs. Boswell on Auburn Street. Detective Hicken then identified some photographs taken at 363 Auburn Street on the morning in question.
I
The appellant contends that the trial judge erred in overruling the appellant’s objection and allowing State Toxicologist Charles Smith to testify that in his opinion it would have been difficult for the alleged murder weapon to have been fired accidently. The appellant cites us to Roan v. State, 225 Ala. 428, 143 So. 454; and Garrett v. State, 268 Ala. 299, 105 So.2d 541, in support of his contention.
In the case at bar, Mr. Smith testified that he performed certain tests on the alleged murder weapon to determine if it, in fact, fired the bullet which caused the death of Mrs. Boswell [R. pp. 35-37]. Moreover, he stated that part of his duties were to test and examine firearms, and that he had considerable training and experience in this area.
We are of the opinion that the trial court properly determined that Mr. Smith was an expert, and we do not therefore believe it was error for him to testify that the weapon required “more than an average pull on the trigger,” and that “it would be difficult for it to be fired accidently.”
We believe the trial court’s rulings in this respect are correct and fully supported by the authorities. Pruitt v. State, 232 Ala. 421, 168 So. 149; Stallings v. State, 249 Ala. 1, 32 So.2d 233; Ellis v. State, 39 Ala.App. 325, 100 So.2d 725, cert. denied 267 Ala. 235, 100 So.2d 732, and authorities therein cited.
We have carefully examined this record and find same to be free from error. The judgment is therefore
AFFIRMED.
All the Judges concur, except CATES, P. J., not sitting.