TYSON, Judge.
Don McClendon was indicted for the first degree murder of Ina Murl Crossley Marshall “by shooting her with a pistol.” The jury found the appellant “guilty of murder in the second degree” and fixed punishment at imprisonment in the penitentiary for fifteen years. The trial court set sentence in accordance with this verdict.
At the close of the State’s evidence and also at the close of the rebuttal evidence for the State, the appellant moved for a directed verdict on the grounds the State failed to prove a prima facie case and also that the State failed to prove any evidence of malice. The appellant also filed a motion for new trial which challenged the weight and sufficiency of the evidence which was overruled following a hearing thereon.
Barbour.County Deputy Sheriff Carl Ha-gler related that he went to the “Club 99” on Highway 130 about 7:40 on the night of June 9,1978, accompanied by Officer Baker. He described Club 99 as being located in the Louisville community of Barbour County, about one and a half miles outside Louisville. He stated that the establishment in question was a “beer or juke joint.” Upon arrival they were met by one Herbert Baker, the owner of Club 99. They walked inside where they saw a counter, some tables, booths, and pool tables. They found the body of the deceased, Ina Murl Crossley Marshall, lying in a prone position face up, just behind the counter to the left.
Police Officer Louie Baker indicated that the appellant, Don McClendon, was standing near the doorway with a .25 caliber automatic pistol in his hand, which he subsequently surrendered to Officer Baker. He stated that Deputy Hagler radioed for the coroner.
Louisville Policeman Louie Baker testified he accompanied Deputy Sheriff Carl Hagler to Club 99 at Louisville, Alabama, on the evening of June 9,1978. He described this as a “beer joint and a rough place.” He stated that beer and alcoholic beverages were sold there. He stated there was a “rockola” into which people put money and played music. Officer Baker indicated that the establishment was owned by Herbert “Junior” Baker and was operated by the appellant, Don McClendon.
Officer Baker indicated that he, together with the owner and Deputy Hagler, went inside and there observed the appellant holding a .25 caliber automatic pistol in his hand. They found the body of the deceased lying behind the counter, face up. Officer Baker stated that he asked the appellant for the pistol and he initially refused, which required him to reach over and physically take the weapon from him. The appellant indicated he had a permit from the sheriff to carry it on his initial refusal. Officer Baker stated that during the investigation he handed over the pistol to Deputy Sheriff Lemual McKnight. Upon examination of the victim, he determined there was a bullet wound in the head, blood was running on to the floor, and he could find no sign of life.
Barbour County Deputy Sheriff Lemual McKnight stated that, accompanied by Offi *1251 cer Leroy McCray, he went to the Club 99 in Louisville, Alabama, on the evening of June 9, 1978. When they arrived, Deputy Hagler and Louisville Policeman Louie Baker were already inside. He stated he received a .25 caliber automatic pistol from Officer Baker, which pistol he turned over to Dr. McCahan of the Alabama Department of Toxicology Crime Laboratory. McKnight stated that he also observed the body of the deceased, Ina Murl Crossley Marshall, lying, face up, in back of a counter, and that he could detect no sign of life. He stated that he recovered one spent hull from the automatic and delivered this, along with the pistol, to the Toxicology Lab.
McKnight stated on cross-examination that he was not there when the deceased was first examined, but that subsequently a pistol was removed from her purse.
Sally Stewart Pryer stated she arrived at the Club 99 in Louisville, Alabama, about 5:30 in the late afternoon of June 9, 1978. She stated that the deceased, Ina Murl Crossley Marshall, was there. She stated that she saw Murl, the deceased, playing a rockola. She stated that later she saw Murl and the appellant “tussling,” but she thought they were just playing behind the counter. Subsequently she noticed McClen-don and the deceased tussling and realized that a struggle was going on as the deceased picked up a catsup bottle ¿nd hit the appellant with it. She stated that the deceased first hit the appellant on the shoulder and then hit him a second time as he pushed her and she stumbled backward. As the deceased, who was a large woman, weighing near 300 pounds, fell backward, the appellant “went in the drawer where he kept the money and got the gun.” Sally Pryer indicated that she saw the deceased reach for her purse, that the appellant then reached around her neck, that the gun went off, and she saw Ina Murl Crossley Marshall fall behind the counter.
On cross-examination, Sally Pryer indicated that the entire affray happened real fast after the deceased hit McClendon with a catsup bottle. She stated that a few minutes later police and law enforcement officers arrived.
Willie Fred Wheeler testified that he was at the Club 99 the night Don McClendon shot Ina Murl Crossley Marshall. He stated, that as he was in the back of the building, he did not see the actual shooting, but did see McClendon eject a hull from the gun and saw the deceased lying on her back behind the counter. He stated that when the appellant ejected the bullet the shooting was over.
Don McClendon stated that he arrived at the Club 99 in Louisville, Alabama, about 3:30 on the afternoon of June 9, 1978. He stated that the deceased, Ina Murl Crossley Marshall, came in a short time later and said, “Do you have any beer in the box?” He stated that he replied that he did, but she said she just wanted to know “because she was not buying.” He stated that he told her she would have to pay for the beer, and that later she told him to come and get it, then pulled a pistol on him. He told her to put the pistol away and finish her beer. He stated that a short time later one J. T. Williams came in and asked for change for a dollar, which he made. As Williams was reaching for his money, the deceased grabbed it and took it over to the rockola, put in a half dollar, and started playing music. McClendon said that he said something to her about giving Williams his change and she grabbed a catsup bottle and hit him with it. He stated that he pushed her, that she struck him a second time, that he then pushed her very hard and reached into a drawer for his pistol as she was a very big and strong person.
McClendon indicated that he grabbed the pistol and swung to strike her on the head to get her away from him and the pistol went off. He also indicated that the deceased was known to have a violent temper and a bad reputation. He stated that he had to go to Dr. Jackson for surgery where the deceased cut him on the arm with the catsup bottle.
On cross-examination the appellant admitted striking the deceased with his gun, trying to knock her loose, and that he “hit *1252 the side of her head with the gun, and that was when the pistol went off.” He stated the pistol in question was a .25 caliber automatic Bauer. He stated that he turned this pistol over to Louisville Policeman Louie Baker that evening.
On cross-examination appellant, over objection, admitted a 1961 conviction for assault with intent to murder in Barbour County and that he received probation.
Anthony Knight stated that he was a sergeant stationed at Ft. Campbell, Kentucky. Knight indicated he was inside the Club 99 on June 9, 1978, and saw the deceased come over and get a beer, then argue about paying for it. He said that McClendon told her if her family would not buy her a beer that he would. He stated he saw a pistol in her pocketbook and she took it out, but he thought she later put it back. He stated that he left the club and went over to his father-in-law’s house, but after hearing a shot he returned and saw the deceased lying, face up, in the back of a counter. He stated that the appellant had catsup on his head and on his shirt and that his arm had been cut. He stated that he had heard that the deceased was “pretty mean,” and he had paid his own expenses to come back to Clayton to testify.
David Helms testified he arrived at the Club 99 about 3:30 on the afternoon of June 9, 1978. He saw the deceased and the appellant talking near the counter and later saw the deceased, Mrs. Marshall, put some money in a rockola. He stated that later he saw the victim, Mrs. Marshall, hitting McClendon with a catsup bottle and saw McClendon push her, then come up from behind the counter with a pistol in his hand. He swung at the deceased and struck her and the gun went off as he did so. He stated that the deceased had a bad reputation for violence and was a big woman, weighing over 300 pounds.
K. C. Downey indicated he arrived at the Club 99 in Louisville, Alabama, between 4:30 and 5:00 p. m. on June 9,1978. He saw the deceased, Mrs. Marshall, playing the rockola and spoke to her. He said that later he heard the deceased say, “The s.o.b. [referring to the appellant] said he was going to slap me and I am going to see about it.” He stated he saw Mrs. Marshall get the catsup bottle and start hitting the appellant with it, then saw appellant push her, and as he ducked back, he came up with a gun and struck her. He stated that he saw the deceased fall. Downey stated that Mrs. Marshall had a reputation for fighting.
On cross-examination, Downey said the deceased “socked” the appellant with her fists before he hit her with the pistol.
Junior Marshall stated he was formerly married to the deceased, Ina Murl Crossley Marshall, and that her reputation for violence was bad.
Deputy Sheriff Carl Hagler was recalled and testified that they examined the deceased’s purse and found a .38 pistol in it after the incident.
On cross-examination he testified the pistol was unloaded and that there were no bullets in the purse.
Theotis Comer stated he was in the Club 99 on June 9, 1978. He stated he saw Mrs. Marshall and McClendon facing each other near the counter, and they began tussling over a catsup bottle. He said that Mrs. Marshall struck McClendon. He stated that McClendon pushed her back, and as she was reaching for her pocketbook, McClendon reached in the drawer and got a pistol, then struck the deceased “up side the head with the gun, and the gun went off.” He stated that Mrs. Marshall had a violent reputation. Comer stated that he had not been interviewed by any law enforcement officer and had not testified before the grand jury.
As rebuttal witness, the State called Richard D. Carter, who stated he had eight and one-half years experience in examination of firearms with the State Department of Toxicology. He stated that in June, 1978, he was laboratory director in Enterprise, Alabama, and had received a .25 caliber automatic pistol and a hull from Deputy McKnight. He said that he made an examination and determined that the hull, which was delivered to him, had been fired in the *1253 weapon in question. He stated that he also test fired the pistol to see if it would fire when subjected to blows or stress and found that he “could not get this weapon to misfire” (R. 106). He stated that the only way to make the weapon fire was to pull the trigger.
I
The appellant’s attorney asserts that the State failed to prove a prima facie case, and moreover failed to produce evidence of malice at trial.
In Holcey v. State, 52 Ala.App. 664, 296 So.2d 750, cert. denied, 292 Ala. 723, 296 So.2d 753, we find this discussion:
“Murder in the second degree is the unlawful killing of a human being with malice, but without deliberation or premeditation. Smith v. State, 47 Ala.App. 513, 257 So.2d 372; Young v. State, 47 Ala.App. 674, 260 So.2d 406; Miller v. State, 38 Ala.App. 593, 90 So.2d 166; Warren v. State, 34 Ala.App. 447, 41 So.2d 201.
“In Miller, supra, we find:
“ ‘Legal Malice’ as an ingredient of murder is an intent to take human life without legal excuse, justification or mitigation, and it may be presumed from the use of a deadly weapon, unless the evidence which proves the killing rebuts the presumption. Coates v. State, 1 Ala.App. 35, 56 So. 6; Warren v. State, supra. “Here, the appellant’s use of the pistol presented sufficient evidence from which the Jury could infer that he acted with malice.
“The conflict in the evidence presented a question for the Jury to determine, and the evidence was sufficient, if believed by the Jury, under the required rule to support the verdict. Miller v. State, 38 Ala.App. 593, 90 So.2d 166; Rogers v. State, 49 Ala.App. 78, 268 So.2d 859; Carmichael v. State, 52 Ala.App. 25, 288 So.2d 807; Williams v. State, 51 Ala.App. 694, 288 So.2d 753.”
Clearly, the trial court correctly ruled on the motions made at trial and the motion for new trial filed in this cause.
II
Appellant’s attorney challenges the admission of Mr. Richard Carter’s testimony in rebuttal concerning the tests which he performed on the pistol.
In the case at bar, several defense witnesses testified that the victim, Mrs. Marshall, had begun the affray by striking the appellant with a catsup bottle. In fact, testimony indicates that appellant may have been struck more than once, and that the appellant pushed Mrs. Marshall and struggled to get away from her. '
The last three witnesses for the defense stated that the appellant, Don McClendon, “struck the victim, Mrs. Marshall, with a pistol on the side of the head, at which time the pistol fired.”
There can be no doubt that the trial court properly admitted Mr. Richard Carter’s testimony as to his tests conducted on the weapon to determine if the gun would misfire when subjected to a blow.
We are of the opinion that the trial court correctly admitted Mr. Carter’s testimony in the case at bar. Boswell v. State, Ala.Cr.App., 339 So.2d 151 (1976), and cases cited therein; Neelley v. State, 261 Ala. 290, 74 So.2d 436 (1954).
III
Appellant asserts that the trial court should not have allowed the appellant to be questioned concerning his conviction for assault with intent to murder in Barbour County in 1961.
This questioning was proper, § 12-21-162(b) Code of Alabama 1975; Harris v. State, Ala.Cr.App., 343 So.2d 567 (1977).
IV
We have carefully examined this record and determined that the argument of the district attorney, objected to by the appellant, was within the legitimate bounds of the evidence presented.
*1254 We have also examined the oral charge of the court and the given charges and find that the refused charges were either properly refused under the evidence in this cause or otherwise fairly or adequately covered by the trial court in its oral charge to which no exception was taken, or the several written charges given at the request of the appellant. § 12-16-13, Code of Alabama 1975.
We have carefully examined this record and find same to be free of error. The judgment is due to be and the same is hereby
AFFIRMED.
All the Judges concur.