307 So.2d 53

James Earl WILLIAMS

v.

STATE.

3 Div. 197.

Court of Criminal Appeals of Alabama.

Jan. 21, 1975.

B. F. Lovelace, Brewton, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Escambia County charged the appellant with the first degree murder of Raymond E. Benson in a three-count indictment. One of these counts, to which no demurrer was interposed, averred the means to be "by striking or beating him with a belt." The appellant was represented throughout trial, and here on appeal, by experienced and able court-appointed counsel.

Appellant entered pleas of not guilty and not guilty by reason of insanity, and was found guilty by the jury of murder in the second degree. Its verdict fixed punishment at ninety-nine years imprisonment. The trial court entered judgment in accordance with this verdict.

This indictment and conviction arose from an incident which occurred at the apartment home of the appellant in Atmore, Alabama, in Escambia County, on September 27, 1972.

Dr. Nelson E. Grubbs testified that the deceased was between three and four years of age, and was thirty-nine and one-half inches long. He testified that prior to death the child appeared to be normal and healthy. He described severe bruises on the right and left shoulders, back, stomach, and sides of the child, which bruises were approximately two to two and one-half inches wide with outstanding abrasions or deep pitted marks in and about these bruises. From an examination of a belt, which was shown to him and which was examined by him at the same time that he examined the wounds, he stated that the brads on the belt and the width of the belt were consistent with the wounds on the body, and that the brads or snaps fitted the wounds on the body and made "identical marks." He testified that he performed an autopsy on the body, that from the blows inflicted the liver was ruptured, which was immediately below the rib cage, that the cause of death was "a blow to the right side of the abdomen by a hard object," that in his opinion the belt was the cause of this blow, that in his opinion, based on fifty-one years experience, death was "almost instantaneous" based on "the blows inflicted."

Mr. Edward C. Brooks testified that he lived at 52 Brown Street in Atmore, and was present at the apartment home of the appellant on September 27, 1972. He testified that he saw the appellant get up and go inside the house from his porch and saw him take the deceased child, Raymond E. Benson, and begin whipping him with a belt. Mr. Brooks testified that he recognized the belt as belonging to the appellant, and that this was the belt used to "belt the child." He stated that the appellant took the child into the back bedroom and continued to whip him, that he heard "forceful licks," that he heard the child cry out, that later he saw the appellant hold the child by one arm and take him into the bedroom and put him in the bed with two other children. He stated that this beating "lasted a long time."

Mr. Frank Edwards testified that he knew the appellant, and that he lived at 97

Carver Avenue in Atmore, Alabama, on September 27, 1972. He stated that he was standing on the porch talking with the appellant and another man, and that the deceased was in the house playing with other children. He stated that he saw the appellant go into the house and leave three men standing on the porch. He stated that he heard licks and heard the child screaming and hollering, that he could see the belt and could hear the belt. He stated that "they were severe licks," that after staying there about five minutes he walked down to the store, about one-half block away, that he could still hear the child screaming, that he returned in about twenty minutes and could still hear the beating. He testified that the appellant's wife was not at home at the time of the whipping. He stated that the bathroom shade was pulled so that you could not see inside the bathroom where he heard sounds of the beating.

Arthur Thomas testified that on September 27, 1972, he was at the home of the appellant in Atmore. He stated that he was on the porch with two other men and the appellant, that he saw the appellant arise and go into the house, and that the deceased was appellant's stepson. He stated that the curtain was pulled, that he could hear the sound of a belt, and that it "lasted over twelve minutes." From the record:

"Q  What did you hear at that time?

"A  It wasn't no switch because a switch don't make no sound. I had too many whippings. It sounded like a belt. And I sat there, I reckon, about fifteen or twenty minutes. I got so full I got up off the porch and walked away. Went up to the store and got me an orange soda and started back down there. He still whipping him. I turned around then and went on down the street. I just couldn't stand no more of it. I didn't say not a word to him or nobody, I walked away."

Atmore Police Officer Thomas E. Miller testified that on September 28, 1972, he was employed by the Police Department of the City of Atmore. He stated that the appellant, James Earl Williams, came to Police Headquarters and asked him to go over to 97 Carver Avenue with him. In route, the appellant, without any effort made to question him and before any charge was made, repeated, "I should not have whipped the child like I did." Officer Miller testified that when he entered the residence he saw three children lying on the bed, two of them appeared to be playing, and "the third child was lying face down motionless," in the same bed. He stated the body of this child was cold and stiff, and that the appellant's wife was crying hysterically. He stated that he checked the body for vital life signs and could not detect any pulse or breathing. He stated that on a small table about four feet from the bed was a belt lying in plain view, which was "in two pieces there," and that one part of it "had brads in it," that he took the belt and arrested the appellant, that he delievered the belt to Assistant Chief Shanks.

Ulyses Knott testified that he was at the appellant's home on the date in question and corroborated the other witnesses' statements as to the beating of the child.

The appellant's wife, Lawand Williams, testified that she returned home shortly after 9:00 on the evening of September 27, 1972. Upon her arrival, she saw the child in bed and noticed the bruises, but thought he was asleep. She testified that she had left home about 7:00 that evening, and that the child was well. She stated that the next morning she realized that the child was dead, that a policeman came to the house and investigated. She testified that appellant told her that he had "whopped" the deceased, that he cried that night about beating the child, and that he had been a good husband. She stated that one time during the night she had gotten up and felt Raymond (the deceased), and "that he was real cold."

James Earl Williams testified that he had been previously married, that he had

four children, and that the deceased was his stepson, but that he considered him as his own. He stated that his wife had fixed dinner and had gone out that evening about 7:00, that there were three men on the porch with him when he heard sounds of the boys playing inside. He admitted whipping the deceased, Raymond E. Benson.

The appellant further testified as follows:

"Q What did Raymond do at that time to make you want to whip him?

"A I'm gonna tell you now. He was inside playing with the toys and then Clarence started crying and Raymond was the one that took the toy from him and I told him to stop or I was going to whop him, just like that. And so I went back out on the porch again and it started again. I took the toy from him and put him over on the bed and told him to stay in the bed there. And I went back out and I peeped through a window that had curtains but a crack was in it and I got on the side looking like that and directly he knocked Clarence out the bed. I told him I was gonna whop him and I meant it. And Raymond told me, said, 'You ain't gonna whop me,' just like that. I said, 'Okay, just watch what I tell you.' And so I went back outside and left my cigarettes on top of the refrigerator there and went back and was sitting on the porch and Charles asked me for a cigarette and I went back in to get the cigarettes and he had the little baby, Anthony, hanging out the bed and holding one foot."

The appellant admitted that the belt was torn and in two pieces, that he whipped the child with one piece, but did not realize that the piece he used had snaps on it. He stated that the curtains were drawn in the bathroom and in the bedroom, that after whipping the child, he put him back in the bed with the other children, that he saw the bruises on the child, and that it "scared" him because he did not "mean to whip him that much."

The appellant's request for the affirmative charge and the affirmative charge with hypothesis were refused by the trial court.

I

■ Appellant contends that the beating of his three year old stepson with a studded belt did not establish malice sufficient to sustain a conviction of murder in the second degree.

In Carmichael v. State, 52 Ala.App. 25, 288 So.2d 807, we find:

"Murder in the second degree is the unlawful killing of a human being with malice, but without deliberation or premeditation. Smith v. State, 47 Ala.App. 513, 257 So.2d 372; Young v. State, 47 Ala.App. 674, 260 So.2d 406; Miller v. State, 38 Ala.App. 593, 90 So.2d 166; Warren v. State, 34 Ala.App. 447, 41 So.2d 201.

"In *Miller,* supra, we find:

" ' "Legal Malice" as an ingredient of murder is an intent to take human life without legal excuse, justification or mitigation, and it may be presumed from the use of a deadly weapon, unless the evidence which proves the killing rebuts the presumption. Coates v. State, 1 Ala.App. 35, 56 So. 6; Warren v. State, supra.' "

In the case at bar, the appellant's use of the portion of the belt with the studs on it presented, under the facts here established, sufficient evidence from which the jury could infer that he acted with malice. Carmichael v. State, supra; Holcey v. State, 52 Ala.App. 664, 296 So.2d 750, cert. denied 292 Ala. 723, 296 So.2d 753; Smith v. State, 154 Ala. 31, 45 So. 626.

The fact that the appellant testified that he did not realize that he was whipping the child with the portion of the belt with the

studs on it, and that he did not mean to whip him "that long" is not the proper criteria. Carmichael v. State, supra; Vernon v. State, 239 Ala. 593, 196 So. 96.

"In Rogers v. State, 49 Ala.App. 78, 268 So.2d 859, this Court noted:

" 'However, as to second degree murder, the crime for which appellant stands convicted, the law in Alabama is such that a finding of specific intent to kill is unnecessary to support a conviction. Smith v. State, 154 Ala. 31, 45 So. 626; Titus v. State, 117 Ala. 16, 23 So. 77; Fowler v. State, 155 Ala. 21, 45 So. 913 . . . .'

"The conflict in the evidence presented a question for the Jury to determine, and the evidence was sufficient, if believed by the Jury, under the required rule to support the verdict. Miller v. State, 38 Ala.App. 593, 90 So.2d 166; Rogers v. State, supra." [Carmichael v. State, supra] See also Diamond v. State, 219 Ala. 674, 123 So. 55.

It is clear that under the evidence in the case at bar the trial court properly refused the appellant's request for the affirmative charge and the affirmative charge with hypothesis.

## II

■ Four photographs of the child's badly bruised body were admitted in evidence over appellant's objection that such were gruesome.

It is clear that these photographs, which were identified and authenticated by Dr. Grubbs, and which were relevant to show the wounds inflicted, were properly admitted. The fact that such were gruesome did not prevent their being admitted in evidence. Smarr v. State, 260 Ala. 30, 68 So.2d 6; Nichols v. State, 267 Ala. 217, 100 So.2d 750; Grissett v. State, 241 Ala. 343, 2 So.2d 399; Brodka v. State, 53 Ala. App. 125, 298 So.2d 55.

## III

At the conclusion of the trial court's oral charge, the appellant announced, "Satisfied."

■ The trial court then gave eight of the appellant's requested written charges and denied fourteen others, besides the affirmative charges. Refused charges Nos. 5, 9, 11, 12, 13, 14, 15, 17, 19, and 22, were fully and adequately covered by either the trial court's oral charge, or given charges; hence, their refusals were proper. Title 7, Section 273, Code of Alabama 1940.

■ Charges Nos. 18 and 24 both contained misspelled words, and, in addition, are incorrect statements of applicable law; hence, their refusals were proper.

We have carefully examined this record, including all rulings of the trial court, and find same to be free from error. The judgment is therefore due to be and the same is hereby

Affirmed.

CATES, P. J., and HARRIS and De-CARLO, JJ., concur.

ALMON, J., not sitting.