310 So.2d 249

Geraldine **LAYNE**

v.

**STATE.**

**8 Div. 522.**

Court of Criminal Appeals of Alabama.

Feb. 18, 1975.

Rehearing Denied March 18, 1975.

J. Knox Argo, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Eric A. Bowen, Asst. Atty. Gen., for the State.

BOOKOUT, Judge.

Geraldine Layne was indicted for first degree murder for killing her three-year-old daughter and was convicted on January 30, 1974, of second degree murder and sentenced to eighteen years in the penitentiary. The indictment against appellant charged the killing to be, "by some means unknown to this Grand Jury."

Testimony was given by neighbors showing a history of recent abuse of the deceased child, Tammy Layne. Testimony was also received from Doctor A. R. Demick, a medical doctor with the University Hospital in Birmingham in charge of the burn service. Other witnesses for the State included one brother and two sisters of the deceased child, three doctors, a nurse and an employee of the emergency room of the Huntsville Hospital.

Various neighbors testified having observed the child, Tammy Layne, in the family's home and backyard on several occasions. The baby was observed with cuts and lacerations on its head, covered with green flies, with a bad sore on its back approximately six inches around, with a sore on the top of her head, and with two blisters on its arm, one of which had broken open and skin was hanging from it. This testimony came from a number of witnesses concerning the child's condition at various times within a three-week period before the burning incident and its death.

One witness had asked the mother to take the child to the doctor because of the sores and lacerations, but she refused. A neighbor testified to hearing screams and crying in August 1973, coming from the direction of the Layne's home, but did not know if it was the Layne children. One witness asked the mother what was wrong with the baby, and the mother replied that it was crazy.

The five-year-old son of the appellant testified that the baby was burned by his mother throwing hot water on her. The seven-year-old daughter of the appellant testified also that the appellant burned the baby by pouring hot water on her. She also stated that sometimes the appellant hit Tammy with a stick, and that Tammy slept at night on the floor in the hall and never slept in bed. The nine-year-old daughter of the appellant testified that her mother came out the door of the house and poured the boiling water on Tammy saying, "that will teacher her a lesson to get up on the kitchen table."

The next day, the child was taken to the hospital. Defense counsel cross-examined all three children bringing out some inconsistencies in their testimony, however, all three testified that their mother, the appellant, burned Tammy with hot water.

The emergency room secretary at the Huntsville Hospital testified she saw Tammy Layne on Saturday, September 8, 1973. She described the child as dirty and with numerous bruises and the skin on her body was peeling. The child also had open cuts and the right eye was matted closed, and she was lying in a fetal position. There was a rancid odor about the child, but she was not crying. The witness testified further that the child's feet and ankles were

swollen and that her stomach or abdomen was extended.

A nurse at the Huntsville Hospital emergency room testified that the appellant brought Tammy Layne to the emergency room. She stated that the child had burns over her entire extremities and there were two lacerations on her head which were old. She also stated that seven maggots were removed from the child's ear.

Doctor Allen R. Demick testified that he examined the child on September 10, 1973, at the University Hospital in Birmingham. He stated the burns covered about seventy percent of the child's body and that the child also had lacerations of the skull which were old and infected. He stated that the burns were at least several days old and that the child died on September 14, 1973. Color photographic slides of the child were introduced, and Doctor Demick used them to illustrate part of his testimony.

Doctor Peter Booher, a radiologist, who had supervised the X-Rays taken of the child testified as to some of those X-Rays showing injuries and fractures around the rib cage and skull.

Doctor V. M. Howie, a pediatrician, testified as to the appearance of the child's burns and infection and stated that seven maggots had been removed from her left ear. The burns appeared to him to be one to two days old with some gangrene present, and she had infected lacerations on the scalp with one containing maggots.

Doctor O. J. Staats testified concerning his autopsy of the child. He was subjected to lengthy cross-examination and redirect examination and was later recalled as a witness on this point.

### I

Appellant contends the evidence will not support a second degree murder conviction as no malice could be proved since the mother threw the boiling water on the child in an attempt to disclipline her.

The same argument was made to this Court in the recent case of Williams v. State, Ala.App., 307 So.2d 53. Judge Tyson covered this subject fully in his opinion in that case, which involved a step-father beating a three-year-old child with a studded belt. The appellant in that case claimed the death was caused in an attempt to discipline the child. Finding the evidence presented a jury question, this Court affirmed the conviction of murder in the second degree.

■ Second degree murder may be defined as the unlawful killing of a human being with malice, but without deliberation or premeditation. Evidence of a mother intentionally pouring a lethal substance such as boiling water on her helpless three-year-old child is clearly sufficient to support a finding of malice by the Jury.

■ In the instant case, we find sufficient evidence to sustain the Jury's verdict. Appellant was charged with first degree murder. The trial court gave the Jury a lengthy charge concerning first degree murder, second degree murder, first degree manslaughter and second degree manslaughter. The Jury later requested further information on the degrees of such offenses, and the trial judge again gave them a full explanation.

■ There was no motion to exclude the State's evidence and no motion for a new trial. The question of whether the evidence supported a conviction of first degree murder or that of a lesser included offense was properly put to the Jury for their determination. Williams v. State, supra; Carmichael v. State, 52 Ala.App. 25, 288 So.2d 807; Smith v. State, 154 Ala. 31, 45 So. 626.

### II

Appellant contends there was a variance between the proof and the indictment which charged the death to be by a means unknown to the Grand Jury. This contention is based upon evidence presented to

the Grand Jury by Doctor O. J. Staats which appellant says established the means of the killing to be application of some hot liquid.

Doctor Staats' testimony concerning the autopsy was extensive. After describing various injuries and their extent, he stated the primary cause of death was " . . . from a combination of pneumonia and shock lungs which were secondary to its burns." He further testified that on being examined before the Grand Jury, he did not give a conclusionary opinion on the cause of death as he had not conferred with Doctor Demick. Doctor Staats stated that his testimony before the Grand Jury was essentially the same as given during the preliminary hearing. Trial counsel for appellant tried unsuccessfully to tie down Doctor Staats' Grand Jury testimony to a definite conclusion as to the cause of death. On cross-examination, he was asked if the fatal lung infection was an outgrowth of the burn, to which he replied:

"A. No, I don't say that specifically. I don't know where the infection came from in the lung. I say it could have come through the skin or the lacerations in the scalp or it could be complicating factor of anybody that's seriously ill and come through the air passages, air passages usually keep bacteria out, wherein if someone goes out and has a lot of alcohol and lies in the street they will develope pneumonia and the bacteria come in through a depressed area. So, it can come from a lot of different places."

After being recalled by the State, Doctor Staats testified:

"A. I said to the Grand Jury that the cause of—that I was not totally certain of the cause of death because there were several bits of information that I was not aware of at the time of the Grand Jury. I had not talked with Dr. Demick and I had not thoroughly completed the autopsy report."

Title 15, Section 242, Code of Alabama 1940, provides:

"When the means by which the offense was committed are unknown to the grand jury, and do not enter into the essence of the offense, the indictment may allege that they are unknown to the jury."

Whether the Grand Jury knew the specific means of the killing was a question of fact to be decided from the evidence. Vaughan v. State, 236 Ala. 442, 183 So. 428; Terry v. State, 118 Ala. 79, 23 So. 776; Eatman v. State, 139 Ala. 67, 36 So. 16.

Evidence on this point, though conflicting, was sufficient for the trial judge to refuse to give the affirmative charge. Appellant on November 21, 1973, filed a demurrer to the indictment setting forth seven general grounds, but not specifically alleging a failure of the Grand Jury to set forth the means by which the crime was committed. The record is completely silent as to the ruling of the trial court on the demurrer, if in fact a ruling was ever invoked.

Appellant's trial counsel requested the following written Charge No. 24, which was given by the trial court:

"The Court charges the jury that if they believe from the evidence that the Grand Jury which found the indictment in this case knew from the evidence before them the means or instrumentality used in producing the death of the deceased, they cannot find the Defendant guilty."

Appellant requested the trial court to put this issue to the Jury and the Jury, based upon ample evidence, decided against the appellant.

### III

Appellant contends she was denied a fair trial due to introduction of evidence of

child abuse not charged in the indictment and not the primary cause of the child's death.

The cause of death was not specified in the indictment as discussed above, and the appellant cannot limit the State's proof solely to her contention that death was caused only from the burns.

■ If any facts are shown from which the Jury may reasonably infer that the crime charged was committed, the question must be presented to the Jury and other evidence tending to implicate the defendant is admissible. Hill v. State, 207 Ala. 444, 93 So. 460.

■ If the testimony had been clear and uncontradicted that death was caused solely from the burn, still evidence of recent abuse to the deceased child by defendant would be admissible to show intent, motive or scienter. Lee v. State, 246 Ala. 69, 18 So.2d 706; Lee v. State, 31 Ala.App. 91, 13 So.2d 583, cert. denied 244 Ala. 401, 13 So.2d 590; Thigpen v. State, 50 Ala.App. 176, 277 So.2d 922.

■ Testimony of the physicians in this case is sufficient for a jury to consider that death resulted from a chain of events, i.e. abuse of the child, culminating with the final act of brutality which triggered the causative factors of her death, pneumonia and shock lungs.

## IV

Appellant contends the introduction of photographic slides and X-Rays taken of the child at the hospital was improper as being cumulative of other testimony, inflamatory and gruesome.

State's Exhibits No. 6, 11, 12, 13 and 15 were photographic color slides taken by Doctor A. R. Demick of the child during his treatment of her from September 10, 1973, until her death, September 14, 1973. The slides were properly identified and authenticated by Doctor Demick and were used by him in explaining the burns and lacerations to the Jury.

The X-Rays were admitted as State's Exhibits No. 16 and 17. They were properly identified and authenticated by Doctor Peter Booher, a specialist in radiology. He used the exhibits to illustrate his testimony; No. 16 showing fractures of the child's right sixth and seventh ribs and left seventh rib. Number 17 showed a lineal skull fracture.

The State offered twenty-five exhibits consisting of slides, X-Rays and photographs. On objection of defense counsel, the trial court admitted only the seven exhibits set out above.

■ Properly identified and authenticated photographs may be introduced into evidence, even though gruesome, where relevant to show wounds inflicted. This Court finds the slides and X-Rays were admitted for that purpose, were illustrative of the verbal testimony of the physician witnesses, were relevant and properly admitted. Williams v. State, 307 So.2d 53, supra; Smarr v. State, 260 Ala. 30, 68 So. 2d 6; Nichols v. State, 267 Ala. 217, 100 So.2d 750; Barnett v. State, 51 Ala.App. 470, 286 So.2d 876; Means v. State, 51 Ala.App. 8, 282 So.2d 356.

## V

■ The appellant presented twenty-five written requested charges to the trial court. Charges 18, 19, 21 and 24 were given, the remainder were refused. We have considered all refused charges and find each to have been fully and adequately covered by either the trial court's comprehensive oral charge or by the given charges. Their refusals were, therefore, proper. Title 7, Section 273, Code of Alabama 1940.

We have searched the entire record for error, including all rulings of the trial court, and find none.

Affirmed.

All the Judges concur.