**390**

321 So.2d 730

**Charles Edward CHANCEY**

v.

**STATE.**

**4 Div. 351.**

Court of Criminal Appeals of Alabama.

Nov. 4, 1975.

Earl V. Johnson, Andalusia, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment in this cause (omitting formal parts) is as follows:

"The Grand Jury of said County charge, that before the finding of this indictment, Charles Edward Chancey, alias Charles Chancey, alias Edward Chancey, whose name respectively is unknown to the Grand Jury other than as stated, and being over the age of 18 years, intentionally and unlawfully did hit, beat, strike, cut, stab, burn, scald, or inflict unjustifiable physical pain or mental suffering upon a child, George Wesly Colley Umbarger, under the age of 16 years, in a manner which was not ordinary and reasonable discipline, against the peace and dignity of the State of Alabama."

The jury found the appellant "guilty of child abuse" and fixed punishment at imprisonment in the state penitentiary for ten years. The trial court then entered judgment, setting sentence in accordance with this verdict.

Dr. Wheeler Gunnels testified that two year old George Umbarger was admitted to Mizell Memorial Hospital in Opp, Alabama, at 12:30 a. m. on July 24, 1974. He stated that he examined the child later in the day, and that the patient's history indicated that he had fallen in the shower. Dr. Gunnels said that he determined that the child was in pain and ordered xrays to locate any possible fractures. He stated that the xrays indicated fractures in three separate areas; left lower leg, right upper leg, and right forearm. Dr. Gunnels testified that in his medical opinion, as based on the xrays, George Umbarger experienced pain at the time he incurred his injuries.

At this point the trial court excused the jury and conducted a hearing on the voluntariness vel non of a signed statement given to the authorities by the appellant after his arrest and confinement.

On voir dire, Sheriff Elie Harrell testified that he first spoke with the appellant on July 25, 1974, at the county jail after he had been arrested for inflicting punishment on a minor child under sixteen by the name of George Umbarger. Harrell said that at this time he gave the appellant a "Miranda" warning, advising him of his rights, and that the appellant then signed a waiver form. He met with the appellant again on August 1, 1974, in the Sheriff's Office in the County Courthouse, at which time the District Attorney was also present. Harrell testified that on this occasion, after having his rights read to him again, the appellant wrote out and signed a statement in his own handwriting to the effect that he lost his temper while bathing George and twisted and broke his right leg. Harrell stated that he read the statement back to the appellant and asked him if he wanted to make any changes, and that the appellant replied "No." Sheriff Harrell concluded by stating that the appellant had not been threatened or abused, nor offered any reward, or hope of reward, or promised anything as an inducement for signing the statement.

The appellant then called his estranged wife, Joyce Chancey, and the man she had been living with, Wesley Owens, to testify in opposition to the introduction into evidence of his signed confession. Both of them stated that at appellant's request they visited him in jail one night after his arrest, but before he had signed the confession. They testified that on this occasion, Sheriff Harrell told the appellant that if he would go ahead and plead guilty, he would try to get him off with a year and a day, but if he did not, he would do everything in his power to get him ten years. Mrs. Chancey and Owens said that the appellant told the Sheriff that he wanted to talk with a lawyer before signing any statement, and that the Sheriff told the appellant that the only way for him to get a lawyer would be to plead guilty.

The appellant took the stand and corroborated the testimony of Joyce Chancey and Wesley Owens. He added that when he went to court and the District Attorney did not recommend a year and a day, and it appeared that the judge would give him more, he changed his plea to not guilty, and told the judge that he did not break George Umbarger's arm or leg, and that his signed statement to that effect had been at the Sheriff's insistence.

On cross-examination, the appellant admitted that at the time of his arrest, Sheriff Harrell read him his rights, and asked him if he understood them, and that he replied, "Yes." The appellant also stated that the rights that were read to him included the right to have a lawyer present during any questioning. He stated that his rights were read to him again at the jail, and that he then signed a waiver form. He said that later, on August 1, 1974, after being informed of his rights, he wrote out and signed a statement in the presence of the Sheriff and District Attorney in which he confessed that he lost his temper and broke George Umbarger's right leg.

At this point the trial court ruled that the appellant's confession had been given

voluntarily, and could therefore be received into evidence with the jury to determine what weight it should be given.

Sheriff Elie Harrell was recalled in the presence of the jury and repeated his voir dire testimony.

Linda Johnson Bradley testified that she was the mother of George Umbarger, the injured child. She said that in July of 1974, she was living at 16th Street in Opp with two of her children, the appellant, and his son. Mrs. Bradley stated that on the night of July 23, she left around 9:30 to go to work at the Opp Cotton Mill, leaving the appellant, his son, and her two children at the house. A little past 11:30 p.m., appellant came to the cotton mill and told her that her son had fallen in the shower and needed to be taken to the hospital. Mrs. Bradley said that she went to her boss, who excused her for the rest of the night, and she and the appellant took her son to the hospital in Opp where Dr. Gunnels examined him the next morning.

On cross-examination, Mrs. Bradley testified that she was married to Roger Waldo Bradley, who was at Fort Riley, Kansas, but that she was living with the appellant, whose wife, Joyce Chancey, was living in Andalusia with Wesley Owens. She said that, together with Joyce Chancey, Wesley Owens, and the appellant, Charles Chancey, she went fishing on Sunday, July 21, 1974, at which time George's left leg was bothering him somewhat. Then on Monday, someone at Wesley Owens' house told her that her son had fallen down the steps and hurt his arm. Mrs. Bradley explained that she examined her son on each of these earlier occasions, but did not take him to the doctor because he did not act or appear to be seriously injured. She stated that she swore out a warrant for appellant's arrest because, even though she was not positive that he had injured her son on the night in question, he had been rough with the child in the past, and furthermore if she had waited for Dr. Gunnels to report it, she too, would have become involved.

Roger Prestwood testified that in the summer of 1974, he was the District Attorney of Covington County, and that on August 1, he was present at a meeting in the Sheriff's Office with Sheriff Harrell and the appellant. He stated that at this time the appellant, after having his rights read to him, signed a statement in which he admitted breaking George Umbarger's right leg. Prestwood testified that neither he nor the Sheriff threatened the appellant or offered him any reward, or hope of reward, abused or otherwise intimidated him, in exchange for his confession. He said appellant wrote the statement out in his own handwriting, and the Sheriff then read it aloud and asked him if he wanted to make any changes, and appellant said, "No."

On cross-examination, Prestwood testified that he spoke with the appellant only once, and was not at the jail when the Sheriff talked with the appellant in the presence of Joyce Chancey and Wesley Owens. He said that as far as he knew, the appellant did not have an attorney before he pleaded guilty.

At the conclusion of Prestwood's testimony the State rested.

The first defense witness was Wesley Owens. He testified that he and the appellant's estranged wife, Joyce Chancey, lived together in his house at Route 2, Andalusia. He said that George Umbarger was the child of Linda Bradley, the woman with whom the appellant had been living. Owens said that there was no animosity between the two couples, and that Sunday, July 21, 1974, they all went fishing together, at which time he noticed that George Umbarger was having touble walking. He stated that Linda Bradley and the appellant spent Sunday night with Joyce Chancey and him, and that the next morning, George Umbarger fell down some steps and hurt his arm, but his mother would not let anyone take him to the doctor. Owens said that, although Linda Bradley took out the warrant for the appellant's arrest, she stated that she did not believe that he had

broken her child's leg. He said that later, after appellant's arrest, Linda Bradley's mother and father went into court and obtained custody of their daughter's two children. Owens then recounted his voir dire testimony.

Joyce Chancey testified that the two couples went fishing together on Sunday, July 21, 1974, at which time one of Linda Bradley's children, George Umbarger, could barely stand up. She said that the next day at Wesley Owens' house, the child fell down the back steps and injured his arm, that Wesley Owens offered to take him to the doctor, but Linda Bradley said that it was only bruised. Mrs. Chancey stated that Linda Bradley said that if she did not take out a warrant for the appellant's arrest, her parents would. Mrs. Chancey then went back over her voir dire testimony.

The appellant, Charles Chancey, testified that on the evening of July 23, 1974, Linda Bradley left for work around 9:30 p. m. Later, while giving George Umbarger a shower, he left the bathroom to get a towel, and returned to find that the child had fallen and injured his right leg. Appellant stated that he called Linda's sister to come and stay with the little boy while he went to get Linda at the cotton mill. He said that he rode with Linda to the hospital and remained there until George was admitted and a nurse told them that the doctor would not be in until the next morning. He then returned home to take care of his son and Linda's other child. Appellant stated that he was arrested by Sheriff Elie Harrell and a deputy at Wesley Owens' house on the night of July 24, 1974. He said that during the week before he was admitted to the hospital, George Umbarger had fallen twice, injuring his left leg and right arm.

On cross-examination, the appellant testified that he was twenty-four years old, and lived in Opp, Alabama.

At the conclusion of the appellant's testimony, the defense rested and the State called James I. Johnson in rebuttal. He testified that he lived at 115 Sixteenth Street in Opp, and that he was the father of Linda Johnson Bradley, and the grandfather of the injured child. Johnson stated that on the afternoon of July 24, 1974, while he was unloading his truck in front of his house, his grandson, who lived approximately one-eighth of a mile down the road, came running into the yard. He said that a short time after the child arrived, his mother and the appellant picked him up and took him home. He said that he noticed that his grandson had a big bruise on the left side of his face and that his left arm was swollen. Johnson stated that the child did not fall or in any way injure himself while at his own home, and that after Linda and the appellant picked him up, he did not see his grandson again until the following morning at the hospital.

On cross-examination, Mr. Johnson testified that subsequent to appellant's arrest, the court had awarded custody of both of their daughter's children to him and his wife.

At this point, the State rested.

I

The appellant argues that the allowance of his oral confession in evidence was error since the State did not sufficiently establish the voluntary nature of the statement.

Initially, we note that the trial court's decision to allow appellant's confession to be admitted into evidence should not be disturbed absent a showing that it is palpably contrary to the great weight of the evidence. *Fewell v. State,* 259 Ala. 401, 66 So.2d 771; *Duncan v. State,* 53 Ala.App. 122, 298 So.2d 52.

On voir dire examination, Sheriff Harrell stated that neither he nor anyone to his knowledge had threatened, intimidated, coerced, offered any reward or hope of reward, or other inducement to appellant in

order to obtain a statement. Further, he stated that appellant was given a full *Miranda* warning on at least three separate occasions, originally at Wesley Owens' house when he was arrested, then at the jail on July 25, 1974, at which time he signed a "waiver of rights" form, and finally on August 1, 1974, at the court house just before he wrote out and signed the confession. '

It is true that appellant's testimony, as substantiated by that of his wife and her boyfriend (both of whom it might be noted enjoyed a rather amicable relationship with appellant), contradicted Sheriff Harrell's version of the facts.

From *Hegmon v. State,* 50 Ala.App. 486, 280 So.2d 192, in which we cited *Guenther v. State,* 282 Ala. 620, 213 So.2d 679, cert. denied 393 U.S. 1107, 89 S.Ct. 916, 21 L. Ed.2d 803, the Alabama Supreme Court held:

"The true test of voluntariness of extrajudicial confessions is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence. *Womack v. State,* 281 Ala. 499, 205 So.2d 579. . . ."

This Court cannot infer from the evidence that appellant was mistreated, or placed in a state of fear, or confusion, which would have tended to coerce the statement. In cases of this type, the trial judge is in a better position to pass on the voluntariness of the confession. *Hegmon v. State,* supra.

The trial court's determination that the appellant's statement was voluntary is adequately supported by the facts. *Shewey v.*

*State,* 48 Ala.App. 730, 267 So.2d 520; *Bills v. State,* 49 Ala.App. 726, 275 So.2d 706.

This determination was made after voir dire examination of Sheriff Harrell, and appellant and his corroborative witnesses, outside the presence of the trial jury. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

The trial judge therefore properly admitted the appellant's alleged statement into evidence. *Duncan v. State,* 278 Ala. 145, 176 So.2d 840; *Hegmon v. State,* 50 Ala. App. 486, 280 So.2d 192.

We have carefully examined this record, as required by Title 15, Section 389, Code of Alabama 1940, and find same to be free from error. *Williams v. State,* 54 Ala. App. 244, 307 So.2d 53; *Layne v. State,* 54 Ala.App. 529, 310 So.2d 249.

The judgment is therefore due to be and the same is hereby

Affirmed.

All the Judges concur.