237 So.2d 524

**Ray Eashmon BRAND**

**v.**

**STATE.**

**7 Div. 23.**

Court of Criminal Appeals of Alabama.

June 23, 1970.

Bell, Lang & Ogletree, Lister H. Proctor, Sylacauga, for appellant.

MacDonald Gallion, Atty. Gen., and George W. Hodges, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

Appeal from a conviction of second degree murder with a sentence of 20 years in the penitentiary.

A confession made by the defendant after all the pre-*Miranda* and *Miranda* warnings with his employer, John Ogletree, Esq., an attorney at law present, along with police officers, gives the salient facts:

"June 25, 1968, Eleven p. m., Rights explained to Mr. Ray Eashmon Brand, Colored Male, 19. Number 7–B, Drew Court, Sylacauga, Alabama. At about 6:30 to 7:00 p. m. I met Brenda Joyce Vincent at the Blind Man's Store at Drew Court, Sylacauga, Alabama, 6/25/68. I ask her to ride over to Mrs. Willie Mae Pattersons and she told me yes. So she went down to my house at 7–B, Drew Court, Sylacauga, Alabama, and waited until I took a bath and changed clothes. We left my house at 7–B Drew Court at 7:30 to 8:00 o'clock,

p. m. We got into my car, 1960 Ford, Fairlane, and went to Mrs. Patterson's to play some records. We left there and went back to the Project, Drew Court, just riding around. She told me she wanted to go see her girl friend, Mary Helen Pope in Drew Court to see what time she went to work tonight. I carried her to see Miss Pope. She got out of the car and went in the house and came out and said she was not ready to go back home. So we decided to go to the American Legion where my mother and some others were playing Whiz. Just before we got to the club she told me to stop. So we got out of the car and stood by the front door of the car. We were kissing and playing. So I pulled my gun out of my car and started to playing with her. And there were no arguments or anything. The gun went off. I do not remember touching the trigger or anything. After the gun went off I laid the gun, a RG 10 German made, .22 caliber revolver Serial Number 965528 on top of the car. I picked her up and put her in the car. We drove to the club and called my mother. She, my mother, screamed. We left the club. And Charles Cunningham was driving my car. He carried me by Mr. John Ogletree's home, 10 South Anniston, and dropped me off and carried the girl on to the hospital. Mr. Ogletree and myself went to the Sylacauga Police Department and reported to Mr. Atchley, Radio Operator, Sylacauga Police Department. We left there and went on to the hospital and my mother told me she was dead. Signed Ray Eashmon Brand. Witnesses: Henry J. Matson, William Parks, John Ogletree, Jr., and Clinton Perkins."

It is argued in appellant's brief as follows:

"It is settled that for a verdict of second degree murder to stand, the jury must have found the necessary element of malice from the evidence presented. Malice may be expressed or it may be presumed when one kills another by the *intentional* use of a deadly weapon, *unless* the evidence which proves the killing rebuts the presumption. Kemp v. State, 278 Ala. 637, 179 So.2d 762 (1965).

"There was not a single piece of evidence introduced to show that Ray Brand evidenced a depraved mind and heart on the day and night of June 25, 1968. Totally without evidence of expressed malice, the jury's verdict was based upon a finding of implied malice or a presumption of malice from the actions of Ray Brand on the day and night of June 25, 1968.

"Ray Brand contends that after this Court has made a detailed review of the evidence presented in this trial, it will find that no presumption of malice could arise under the facts, but if it did, the evidence that proved the killing of Brenda Vincent totally rebuts the presumption.

"The appellant strongly urges this Court to examine the testimony of the *only* witness presented by the prosecution to prove that Ray Brand intentionally shot the .22 pistol that killed Brenda Vincent. Mr. Robert Johnson, a member of the State Toxicologist Department and qualified by the prosecution as an expert witness, testified that the .22 pistol and bullets were placed in his hands by the Sheriff of Talladega County to specifically determine whether or not this pistol could fire accidentally. Mr. Johnson specifically stated that the pistol could have discharged accidentally by force against the hammer. He further testified that he test fired the four bullets remaining in the chamber by pulling the trigger and by applying force to the hammer. After comparing the firing pin impressions from these hulls with the firing pin impression from the hull of the bullet that killed Miss Vincent, Mr. Johnson clearly stated both in his written report and in testimony from the stand, that he was *unable* to reach a satisfactory conclusion as to whether the hull that killed Miss Vincent was fired

by striking it accidentally or by intentionally firing the gun. The State's *only* witness to show that the pistol was fired intentionally, further testified that he *could not distinguish* between the firing pin mark made in any of these different methods.

"Mr. Johnson closed his testimony by saying that the .22 pistol was a cheap pistol without a safety on it and that the test bullets were fired in the gun by both pulling the trigger and bumping the hammer; however, the marks made in each way were so *inconsistent* as to fail to contribute much to our investigation. "Ladies and Gentlemen of the Court, this is the *only* evidence presented by the prosecution to prove that Ray Brand intentionally fired the .22 pistol. This is the *only* evidence the jury heard to raise the presumption of malice from the intentional firing of a deadly weapon. Can this Court conclude from this evidence that the presumption of malice was raised. \* \* \*."

The answer to this question is "yes." The trial judge correctly charged the jury, with no exception being taken by the defense, as follows:

"\* \* \* Every intentional and unlawful killing of a human being with a deadly weapon such as a pistol is presumed to be done with malice unless the circumstances which surround the killing rebut the presumption of malice. So, if a person intentionally and unlawfully kills another by the use of a deadly weapon such as by shooting that person with a pistol, he would be guilty of murder in one of the two degrees, that is murder in the first degree or murder in the second degree, unless there are circumstances and facts that surround the killing which rebut the idea of malice."

In brief the Attorney General argues:

"The important aspects of this case revolve around the expert testimony of Mr. Robert Johnson, State Toxicologist, who performed the autopsy on the body of Brenda Vincent and who also made certain tests on the alleged murder weapon, a .22 caliber pistol. Dr. Johnson testified that his examination of powder burns on victim's dress showed that the pistol was almost a contact shot, the weapon being fired not over an inch from the dress. He also stated that the bullet entered the body above the left breast and proceeded on an almost horizontal path five to ten degrees downward. He also tested the pistol as to its firing characteristics to determine its capability of being fired without actual pulling of the trigger. He said it was a double action gun where the trigger is pulled, the hammer goes back and fires and the cylinder revolves all in one operation. He said a fairly heavy blow would be required to fire the gun by striking the hammer with a stick or hitting it against something. The appellant's attorney argues that the gun fired accidentally while he and victim were kissing and playing without any preceding argument. However, witness Mary Helen Pope said that the victim came by her house a short time before the shooting and made a statement to her. Witness said the alleged engagement of victim and defendant was only in the talking stage and there had been no ring, to her knowledge. There was also a discrepancy between the defendant's statement and the testimony of defendant's mother concerning the placing of Brenda Vincent in the back seat of defendant-appellant's car. Appellant's statement said he placed victim there, whereas, his mother said she was the first person to arrive at the car after the shooting and that her son was standing on the ground outside the driver's side of the car holding victim up and that she, his mother, helped him put victim in the car.

"Therefore, although there were no witnesses to the actual shooting, Dr. Johnson's expert testimony negates an

accidental shooting even though the Toxicologist could not say it could not happen. * * *."

■ Furthermore, two actions on the part of the defendant after the killing were to us pertinent to any consideration of the other evidence by the jury. The defendant did not take his wounded sweetheart immediately to the hospital. He delayed and first went to the American Legion Club some distance out of town to get his mother away from a game of whist. Next, rather than accompany the girl to the hospital, he had Cunningham go out of his way (albeit but a short distance) to Mr. Ogletree's house. These circumstances, though perhaps slight, are sufficient along with Johnson's testimony to support the verdict in conjunction with the positive evidence of the use or misuse of a deadly weapon.

■ The second point argued in the brief for appellant is that the trial judge should have granted his motion for a new trial.

Apparently no evidence was adduced in support of this motion. The judgment entry merely states that the motion was argued and submitted for ruling. In this posture, of course, we have to treat the testimony on the trial as constituting the factual basis for the argument on the motion.

It is not needful to fall back upon the oft cited case of Cobb v. Malone, 92 Ala. 630, 9 So. 738, since we consider that there was sufficient legal evidence adduced before the jury to support the verdict to a degree required in criminal causes, i. e., beyond a reasonable doubt.

We have carefully considered all the evidence under the requisites of Code 1940, T. 15, § 389, and conclude that the judgment below is due to be

· Affirmed.