TYSON, Judge.
The appellant was indicted for the unlawful possession of Heroin. The jury found the appellant “guilty of possessing Heroin as charged,” and the trial court entered judgment, setting sentence at ten years imprisonment.
Doris Ann Reed testified that she had formerly been married and had left a young son with relatives in Houston, Texas. She stated that she originally met the appellant, James N. Parham, when she was working in Tucson, Arizona, at the Tucson Gas and Electric Company. She stated that she had driven with the appellant in March, 1975, from Tucson, through Houston, to Beaumont, Texas, and from there to Mobile, Alabama. She stated that she and the appellant had stopped at a motel in Mobile after first stopping by an apartment.
While at the motel, “two guys” came looking for the appellant, and the appellant left the motel with these two men for a few hours. About forty-five minutes after the appellant had returned to the motel, she and the appellant left in her car, following a “guy to the apartment” (R. p. 21). While at the apartment with the appellant, she testified that a man, whom she identified as Cecil McCreary, gave the appellant a roll of money in the amount of $500.00, and upon their leaving the apartment, the appellant gave McCreary a plastic bag “that had some powdery stuff in it” (R. pp. 22-23). She then stated that she and the appellant returned to the motel where she subsequently stole the above mentioned $500.00 from the appellant and left the motel in her car, which contained all of the appellant’s belongings. Between thirty minutes and an hour later, she called the appellant at the motel and told him, “You know I ripped you off,” to which the appellant replied, “Forget about the money Bring the shaving kit back” (R. pp. 23, 63, 65). However, instead of taking the shaving kit directly back to the appellant at the motel, she called Cecil McCreary who advised her “to let him get the shaving kit back,” and at this time she arranged for McCreary to meet her at the Mobile Airport (R. p. 24). She then testified that after she arrived at the airport, she opened the appellant’s shaving kit and observed a “see through sandwich bag,” which she later learned contained Heroin (R. p. 24). Thereafter she placed the shaving kit in Locker 107 there at the airport, met Cecil McCreary, and they then left the airport in McCreary’s car (R. p. 26). On cross-examination, she reiterated the story about-' placing the shaving kit in the locker at the Mobile Airport. Again she stated she did not know the substance in the kit was Heroin, and that to her knowledge she had never seen Heroin before (R. p. 47). Furthermore, she testified that while in McCreary’s car he pulled a gun on her (R. p. 60), took her purse and the locker key (R. p. 65), then threatened to kill her because he believed she was an undercover agent (R. p. 61). The witness at that time jumped from the car and broke her leg (R. pp. 61, 102).
Sergeant Don Gill of the Mobile Police Department testified he interviewed Doris Ann Reed at Mobile General Hospital and that she gave him some “information concerning the location of narcotics in Mobile County” (R. p. 82). Sergeant Gill relayed this information to Officer George Sullivan (R. pp. 82, 85), who then advised the security guard at the Mobile Airport of the information he had received from Sergeant Gill (R. p. 85).
Officer Douglas Jones of the Mobile Police Department testified that he was on duty at the Mobile Airport the day of the appellant’s arrest (R. p. 77), and upon receiving Sergeant Gill’s information (in reference to the possible existence of narcotics at the airport); he began watching the lockers in the airport terminal (R. p. 78). Officer Jones then testified he observed the appellant enter the airport terminal, walk over to the lockers, then turn and walk away (R. p. 78). Officer Jones stated that the appellant then attempted to make two phone calls, and, shortly thereafter, re *914 turned to the locker area where he then placed a key in Locker 107, and slowly opened the door (R. p. 78). Officer Jones continued saying that when the appellant “got down over the bag,” he informed the appellant that he was a police officer at which time the appellant “dropped a plastic bag” (R. p. 79). On cross, Officer Jones admitted that the appellant had not completely removed the bag from inside the locker at the time of the arrest (R. p. 81), and that the appellant did drop the bag inside the locker (R. p. 80).
The appellant testified at length and denied the essential allegations made by Doris Ann Reed. He stated that Doris Ann Reed did call him at the motel and informed him that she had taken his money (R. p. 98), but the appellant did not say he instructed Doris Reed to bring back his shaving kit (R. pp. 98-99). Although the appellant did not deny ownership of the shaving kit that was placed in Locker 107 at the airport, he did deny having knowledge of the Heroin contained therein (R. pp. 102, 103). The appellant stated that the following evening after receiving the call from Doris Reed he was “approached by a young man” (unknown to him) (R. p. 100) and was given two keys for lockers in the Mobile Airport. The appellant testified the stranger stated that the locker keys “were given to me by a girl named Doris Reed, and she told me to tell you that your clothes were there” (R. p. 100). The appellant then went to the airport, opened the locker and was there arrested by Officer Jones. The appellant further testified that he merely opened the locker door and never touched the bag inside the locker (R. pp. 119, 120, 125).
Alilee Pillman testified that after conducting tests on the contents of two packets she had received from the Mobile Police Department, she found the contents of each packet contained Heroin and Diazepal (R. p. 57). It was stipulated by the appellant that there were no irregularities in the chain of possession (R. p. 58).
I
The appellant asserts that he was never in actual possession of the Heroin, hence, his conviction is due to be reversed.
In a prosecution for unlawful possession of narcotics, the element of possession, of course, must be proven. “Possession,” however, is one of the most ambiguous terms in law, and although many courts have attempted to fix its meaning with some definiteness and certainty, what has resulted is that the word has been given a variety of definitions and interpretations.
Presiding Judge Cates, speaking for this Court in Radke v. State, 52 Ala.App. 397, 293 So.2d 312 (1974) has said:
“Possession — the visible possibility of exercising physical control over personalty — is usually divided as actual (manu-captive) or constructive. Possession has three attributes: (1) actual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control.”
Although the appellant argues failure of proof of constructive possession, the trial court imposed an even heavier burden on the State by charging the jury that in order to convict the appellant of the offense, they had to find that the appellant was in actual physical possession of the Heroin (R. p. 134). There is evidence in the record (testimony of Officer Jones, R. p. 79) that proves that at the time of the arrest the appellant had actual physical dominion and control of the shaving bag containing the Heroin. Since the appellant stated that he never touched the shaving kit, but was arrested by Officer Jones immediately after he opened the locker door, the issue of his actual physical possession was a disputed evidentiary fact. The jury resolved the dispute against the appellant by finding him guilty, and this court is without warrant to disturb the verdict of the jury where the evidence is conflicting. *915 Oury v. State, 53 Ala.App. 240, 298 So.2d 661 (1974); Woodward v. State, 52 Ala.App. 524, 294 So.2d 772 (1974).
We conclude that the State’s evidence was sufficient to let this cause go to the jury.
We have carefully examined this record and find no error therein. The judgment below is due to be and the same is hereby
AFFIRMED.
All the Judges concur.