HARRIS, Judge.
Appellant was indicted and tried for murder in the first degree. The jury found him guilty of murder in the second degree and fixed his punishment at 15 years in the penitentiary. Throughout the trial proceedings appellant was represented by counsel of his choice. After sentence was imposed, the appellant gave notice of appeal and trial counsel represents him on this appeal.
There was no motion to exclude the State’s evidence. Appellant requested the affirmative charge which was refused. A motion for a new trial was made and, after a hearing, this motion was overruled and denied.
The evidence in this case is in hopeless conflict. The evidence adduced by the State tended to show an unprovoked murder without any extenuating or mitigating circumstances. The evidence presented on behalf of appellant tended to show that shortly before the homicide the deceased had been evicted from appellant’s home because of his continuous use of profanity after being warned to stop cursing and that upon leaving he made a threat to “get” both appellant and his wife. It is claimed that the deceased returned to appellant’s home a short time later and unlatched the gate to his yard and pushed it open. At this time appellant fired one shot which struck the deceased in the upper left chest which caused almost instant death. It is undisputed that the deceased had no weapons of any kind at the time he was shot and killed outside the gate to appellant’s home.
Mr. Jack R. Parker, Deputy Coroner of Jefferson County, whose qualifications were admitted by defense counsel, testified that he was at the Cooper Green Hospital on March 1,1976; that he received a call at 3:04 p. m. to go to Pratt City, and he arrived at 3:24 p. m. He went to an alley between 616 and 624 on Avenue T and observed a black male lying on his back just off the alley. The man was dead at the time the coroner arrived. The deceased was identified as Jerry Johnson, Jr. He stated that the cause of death was due to a shotgun wound which penetrated into the chest and the area of the lungs.
He further testified that there were no weapons on or around the body when he arrived at the scene of the shooting. He was present when the body was undressed at the funeral home and no weapons were found.
George Terry testified that on March 1, 1976, he lived at 618 Avenue T in Pratt City and was employed by the City of Birmingham; that appellant also lived on Avenue T next to his house but there was an alley between their homes. He said the deceased was his brother-in-law and lived next door to him. He stated that the deceased came to his house around 7 o’clock on the morning of March 1,1976, and they drank a cup of coffee. He testified that they then walked over to appellant’s house between 9 and 10 o’clock and that appellant’s wife was there when they first arrived but she left and did not return until 12:30 or 1 o’clock. Terry further testified that he, appellant and the deceased started drinking and they drank until about 3 o’clock. He stated there was no difficulty between appellant and the deceased and the deceased had not been cursing or using any profanity; that around 3 o’clock appellant suddenly told the *536 deceased to leave his house. There was a fence around appellant’s home and there was a gate with a latch on it directly in front of the door to appellant’s home. He said the deceased walked out of the appellant’s home and opened the gate and started walking on the sidewalk in the direction of the alley separating Terry’s and appellant’s homes. He stated that appellant followed the deceased to the gate with an opened knife in his hand; that while the deceased was walking away from appellant’s home he was talking to himself but Terry could not understand what he was saying. He testified that at this time appellant closed his knife, latched the gate and went back in his house. He said he and appellant’s wife were standing on the porch and as the deceased got almost to the alley, he shouted to him to go on home; that the deceased stopped and turned around and at about that time appellant appeared in the doorway and shot the deceased. He said that after the deceased was shot he pulled up his shirt and said, “That man shot me,’’ and he took about 12 to 15 steps and fell in Terry’s side yard.
On cross-examination Terry testified that the deceased was coming back down the sidewalk and was five feet from appellant’s gate when he got shot. He stated that the deceased was not using loud profanity in appellant’s house and that appellant did not tell him to stop using profanity because of the neighbors and to stop cursing in front of his wife. He said the deceased was drinking but he “wasn’t all that drunk.” He denied that appellant took the deceased by the arm and carried him out of the house, but he did tell the deceased “to go on away from my house.” He denied that the deceased made the statement, “I will be back and I will get you,” or that he pointed to appellant’s wife and said, “I will get you also.” He did admit that the deceased went away mumbling to himself but he could not understand what he was saying. He denied that the deceased came back to appellant’s gate and started into the yard and that appellant told him to stop and not come any further; and that he kept coming and that appellant then shot him. He further testified that the deceased was on the sidewalk about five feet from appellant’s gate when he was shot.
Three other State witnesses testified that they saw the deceased before he was shot and he was standing in front of appellant’s house but that he was on the sidewalk outside of appellant’s gate. At no time did they see the deceased open the gate and walk toward appellant’s front porch; that after appellant shot the deceased he staggered over to the yard of George Terry’s and fell. That he was dead when the Coroner arrived at the scene where the deceased was lying. None of these witnesses saw the deceased with a weapon before or after he was shot.
Police Officer T. T. Trammell and Officer Spears investigated the homicide. According to Trammell he observed a black male lying in the alley next to appellant’s house and he was dead at the time; that he and Officer Spears went to appellant’s house and appellant was sitting on his front porch. He testified that Officer Spears went inside the house and got the shotgun from a back bedroom. The shotgun was turned over to an Evidence Technician. He did not see any weapon in the immediate area of the deceased.
Ms. Charlene Kirkland testified that she was a Police Technician with the Birmingham Police Department and that she arrived at the death scene at two minutes to 3 o’clock on the afternoon of March 1, 1976. She stated that she got the gun off the porch of appellant’s house and she found two shells in the shotgun and they were live rounds. One was in the chamber and one was in the place that followed it. She said she found one shell that had been fired near the sidewalk on the yard side of the fence.
Six character witnesses, five of them white, testified they had known appellant for a number of years and had never known him to be in any trouble; they stated he had a good reputation in the neighborhood and that he was known as a quiet and peaceful man. They testified they would believe him in a case in which he was involved.
*537 Appellant’s wife, Katie Brown, testified that she left her house on the morning of March 1, 1976, and did not return until about 1:30 that afternoon. She stated that no one was at her house that morning when she left and that her husband walked to the bus stop with her. She further testified that when she returned home, the only people there were her husband, George Terry and the deceased. That the deceased was cursing and using loud profane language and her husband told him to stop cursing because he had neighbors next door and he didn’t want them to hear. Appellant also told the deceased he didn’t want him cursing in front of his wife. She said her husband told the deceased three times to stop cursing in the presence of his wife and he refused to do so. Then appellant took the deceased by the arm and led him to the front door and told him to get out of his house.
She further testified that as the deceased was leaving he pointed his finger at her husband and said, “I’ll be back, and I will get you,” and he pointed his finger at her and said, “And I will get you too.” She said she had not opened her mouth to the deceased. After he left the house, he unhooked the gate and walked out and hooked the gate back and walked down the street; that after a short time the deceased came back and unhooked the gate and pushed it open. She heard her husband tell him “Don’t come back in my house.” That when the deceased pushed the gate open her husband shot him. She also stated that the deceased had been drinking.
On cross-examination she testified that she did not see anyone drinking that day but she smelled liquor on the breath of the deceased when he was in her living room. She stated that she did not smell anything on anyone else. She further testified that when the deceased came back to the gate, she did not see anything in his hands. She didn’t see a knife, gun, stick or a tree limb. In short, she did not see anything at all in the hands of the deceased before or at the time he was shot.
Appellant testified that he lived on Avenue T in Pratt City on March 1, 1976, and that the deceased and George Terry were in his home early that morning; that when his wife returned home the deceased began to curse and use loud profanity, and he asked him nicely to stop. He did not stop and he asked him again to either stop cursing or leave his house. He said that the deceased continued to curse and appellant caught him by the arm and carried him to the front door and told him not to come back in his yard. That as the deceased was leaving he said he would be back and get both appellant and his wife. Appellant said neither he nor his wife made any threats to the deceased. That when the deceased started coming back towards the gate, appellant went in the house and moved his shotgun from the middle bedroom to the living room. He said, “When I saw him coming in the gate I told him to stop there and stay out there. He kept coming and I fired. I fired the gun and didn’t aim it. I fired the gun to stop him. I didn’t have no intention to kill him. I tried to shoot him in the leg to stop him. I had no intention of hurting him. I fired the gun one time and emptied the magazine and was sitting on the front porch when the officers came.”
On cross-examination appellant stated that he did not remember telling a police officer that he had been drinking that day. He stated that no one had a drink that day except George Terry. He said the deceased looked like he had been drinking and talked like he had been drinking. He further said that after he put the deceased out of the house, he went back in the house and left George Terry and his wife on the front porch; that he moved the gun from the middle bedroom and put it in the living room and he sat down in the living room. He saw the deceased going by the picture window headed out towards the alley and he went to the front door and stood there. His wife and George Terry were on the porch at that time. When the deceased got to the gate and started to open it, appellant said he told him not to come in there. “He made another step and I fired one time but I had no intention to kill him.”
*538 On rebuttal George Terry testified that appellant was drinking gin on the day he shot and killed the deceased. He stated that the deceased was standing on the sidewalk about five feet from the gate when appellant shot him.
As noted above the evidence in this case was in sharp conflict. It is not within the province of this Court to pass judgment on the truthfulness or falsity of conflicting evidence. Snipes v. State, 50 Ala.App. 139, 277 So.2d 413; Parham v. State, Ala.Cr. App., 333 So.2d 912.
Murder in the second degree is the unlawful killing of a human being with malice, but without deliberation or premeditation, and the defendant’s use of a shotgun was sufficient to warrant the jury in finding that he acted with malice. Parks v. State, Ala.Cr.App., 333 So.2d 906; Holcey v. State, 52 Ala.App. 664, 296 So.2d 750.
In Miller v. State, 38 Ala.App. 593, 90 So.2d 166, this Court held:
“ ‘Legal malice’ as an ingredient of murder is an intent to take human life without legal excuse, justification or mitigation, and it may be presumed from the use of a deadly weapon, unless the evidence which proves the killing rebuts the presumption.”
The conflict in the evidence presented a question for the jury to determine, and the evidence was sufficient, if believed by the jury to the required degree, to support the verdict. Young v. State, 283 Ala. 676, 220 So.2d 843; Harris v. State, 48 Ala.App. 723, 267 So.2d 512; Brand v. State, 46 Ala. App. 41, 237 So.2d 524; Pugh v. State, 51 Ala.App. 164, 283 So.2d 616.
Decision on motion for a new trial rests largely within the sound discretion of the trial court and, in reviewing that decision this Court will indulge every presumption in favor of the correctness thereof. Moore v. State, 52 Ala.App. 179, 290 So.2d 246; Johnson v. State, 51 Ala.App. 172, 283 So.2d 624; Hamm v. State, 38 Ala.App. 423, 87 So.2d 863; Parks v. State, Ala.Cr.App., 333 So.2d 906, certiorari denied, Ala., 333 So.2d 912.
The Court charged the jury on murder in the first degree, murder in the second degree, and manslaughter in the first degree. He also charged the jury on the law of self-defense and there was no duty on the part of the defendant to retreat since he was in his own home. He charged the jury that the defendant was presumed to be innocent of the offense charged and that this presumption was to be considered as evidence in favor of the defendant and should not be disregarded. The oral charge dealt with the meaning of “reasonable doubt”, and that the burden of proof was on the State to prove the defendant guilty beyond a reasonable doubt and to a moral certainty. The oral charge dealt with good character evidence. The oral charge was very comprehensive and at the conclusion of the charge both the State and the defense announced, “Satisfied.”
The refused charges were adequately and substantially covered in the oral charge and in the given charges. Some of the refused charges were abstract under the evidence presented.
Appellant was represented by one of Alabama’s most distinguished trial lawyers whose reputation and fame is broad in the land.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.